GENERAL AMERICAN LIFE INSURANCE COMPANY *v.*
BUTTS, administrator.

No. 13907.   January 16, 1942.

*Powell, Goldstein, Frazer & Murphy, John R. Griffiths,* and *Elliott Goldstein,* for plaintiff in error.

*W. M. Dallas* and *John H. McGehee Jr.,* contra.

Grice, Justice.   In 1907 John H. B. Butts entered into a contract of life insurance with the Empire State Life Insurance Company.   The General American Life Insurance Company was the last of several companies assuming the obligations of this contract.

The premium due on June 29, 1934, was not paid by the insured, and the company applied the net loan value of the contract, which was $19.49, to extend the insurance at the then attained age of the insured until August 6, 1934.   The insured died on September 26, 1934.   The policy contained a provision that "If any premium hereon shall not be paid when due, the company shall first apply any withdrawable surplus to pay the same, and the

remainder of the premiums due, if any, shall be charged against this policy as a loan, if the respective loan value specified herein be sufficient to cover such advance, in addition to any existing liens and accrued interest; provided, that if the credits be not sufficient to cover the entire premium when due, the company shall apply the same, if sufficient to pay the premium for a shorter period, but not less than a full quarterly premium. At any time while this policy is thus sustained in force, the payment of premiums may be resumed without medical examination and the accumulated premiums may be paid or allowed to stand as a lien against the policy. No grace will be allowed under this provision." The Court of Appeals ruled, that, while the net loan value of the policy was not sufficient to pay a quarterly premium, and that accordingly the policy was not automatically extended for such period, it was the implied duty of the company to notify the insured of the amount of loan value available, a reasonable time before the premium was due, "so as to enable him to use such equity if sufficient, or pay the amount necessary, to keep the policy in force," and that because of its failure to give such notice "the policy continued in force at least for a quarterly period, that is, to September 29, 1934." We granted certiorari because of the important question of insurance law thus presented.

■ The decision of the Court of Appeals is rested on the ruling in *American National Insurance Co.* v. *Brown,* 58 *Ga. App.* 70 (197 S. E. 658), followed in *Sovereign Camp Woodmen of the World* v. *Cooper,* 62 *Ga. App.* 390 (8 S. E. 2d, 161). The policy in the *Brown* case provided for the company's application of the loan value of the policy to satisfy any unpaid premium; and that if the net loan value was insufficient to pay the entire premium, the policy should be extended for such period as the lesser amount would be sufficient to carry it. The insured failed to pay a premium when due, and the loan value not being sufficient for this purpose, the company, in accordance with the above provision, applied it to extend the insurance for a shorter period. The company gave the insured no notice, before the due date of the premium, of how much loan value was available to him and how much additional payment would be necessary to satisfy the premium, nor did it thereafter notify him of the time for which the loan value would keep the policy in force. The court said,

that the company impliedly agreed, by agreeing to make such loans, to "notify the insured of the amount of the premium loan made and the time it would keep the policy in force," "for the reason that the company was in exclusive possession of the information and means to know the amount of the loan, and because the average person, even if he had the data, could not compute the same, while on the other hand the company employs an actuary, an expert, whose sole duty it is to perform the duty of making such complicated calculations. . . We think that under the facts in this case the company could not forfeit the policy without giving the insured notice of when his policy would expire."

In the *Cooper* case, supra, the premium was payable monthly, and the policy provided that if any . . monthly payment be not paid, . . the association will, without any action on the part of the member, advance as a loan to the said member the amount of the monthly payments required to maintain his certificate in force from month to month until such time as the accumulated loans . . equal the cash value hereof at the date of default in the payment of monthly payments. When the said cash value has been consumed in loans advanced, . . then this certificate shall become null and void; provided, that while this certificate is continued in force under this provision, the member may resume the payment of the monthly payments without furnishing evidence of insurability." The insured ceased payment of the monthly premium in April, 1932. The company, in keeping with the above provision, kept the policy in force until January 31, 1935. In June, 1936, the insured called on the company for a statement of the condition of his policy, and was informed that it had lapsed. The insured sued to recover premiums paid under the policy, on the ground that the cancellation of the policy without notifying him of the amount of reserve available under the policy or the length of time for which this reserve would serve to keep the insurance in force and effect, or as to when the insurance was to be forfeited, before forfeiting the insurance for non-payment of premiums, was wrongful and constituted a breach of the contract. The action was sustained by the Court of Appeals, on demurrer, it being ruled that the company could not "cancel the certificate without notifying the insured, a reasonable length of time before the amount of the automatic premium loan made to keep

the certificate in force would exhaust the cash value of the certificate, so as to afford the insured an opportunity to resume the payment of the monthly premiums and continue the certificate in force." The *Brown* case, in turn, was predicated on the ruling in Kaeppel *v.* Mutual Life Insurance Co., 78 Fed. 2d, 899, to the effect that if the insured, under a participating policy, is granted the privilege of receiving the dividends or of applying them in reduction of premiums, it is necessary for the company to give notice to the insured of the amount of the dividends before it may forfeit the policy for the non-payment of premiums. This decision cited Eddy *v.* Phœnix Life Insurance Co., 65 N. H. 27 (18 Atl. 89, 23 Am. St. R. 17); Owen *v.* New York Life Insurance Co., 126 Miss. 878 (89 So. 770, 772, 17 A. L. R. 1225); Union Central Life Insurance Co. *v.* Caldwell, 68 Ark. 505 (58 S. W. 355); Reed *v.* Bankers Reserve Life Insurance Co., 192 Fed. 408; Phœnix Mutual Life Insurance Co. *v.* Doster, 106 U. S. 30 (1 Sup. Ct. 18, 27 L. ed. 65); 3 Couch on Insurance, 2192, § 667; Richards on Insurance (4th ed.), 622; Vance on Insurance (2d ed.), 297; all of which dealt with notice in regard to dividends. These decisions were based on the theory that the obligation of the insured in respect to the payment of a premium in such case is to pay only the balance after deducting from the premium the amount of the dividend; and that since whether any dividend is declared, and, if so, how much, is a matter for determination by the insurer, and thus lies solely within its knowledge, it becomes its duty to inform the insured, to the end that the insured will know how much the premium to be paid will be, so that he can comply with his obligation. See Kaeppel case, supra, and cit. Whether or not we might be able to agree to the full implications of these rulings, we believe there is a sufficient difference between them, dealing as they do with the duty of the insurance company as respects notice of dividends, and the case now presented, involving the insurer's duty as to notice of the loan value of the policy, to justify a conclusion that those rulings should not be applied here.

Under a policy of life insurance providing for participation by the insured in the profits of the company, the dividends declared by the company represent funds which belong to the insured. He is entitled to have them paid over to him, or he has the privilege, as in the present policy and those involved in the cases cited, to

have the company simply credit it to the amount of the premium, and pay only the balance left due. Since the contract thus provided that the insured had the option of receiving payment of the dividends, or of having the company apply them to the payment of his premiums, it is not unreasonable to assume, as was done in the cases cited, that the parties contemplated that it would be the duty of the company to give the insured seasonable notice of the fact and amount of a dividend. This provision is designed to reduce, if the insured so desires, the amount of money he will have to expend to satisfy the next ensuing premium; and to carry out this object it is essential that the insured know the facts, all of which are peculiarly within the knowledge of the company. Under it, the company may be understood as saying to the insured: "You are entitled to participate in the profits of the company. When a dividend is declared, we will notify you of that fact and the amount, and you may elect whether you desire that we pay it directly over to you or whether you would have us apply it in reduction of the agreed premium, making it necessary that you simply send us the balance of the premium, if any."

We do not, however, find an analogy to this in respect to the loan value of the policy. The loan value of an insurance policy represents a reserve fund set aside by the insurance company, looking toward the final consummation of the contract. In the absence of a contrary stipulation it is the property of the company, and not of the insured. This is evidenced by the fact that if the insured avails himself of this fund during the continuance of the contract, it is by way of loan on which he must pay interest, and which, if not sooner paid, is deducted from the amount of insurance payable on his death. There are no provisions in the policy implying an agreement on the part of the company that it would notify the insured, before the due date of a premium, of the loan value of the policy, so that the insured might elect to use it toward the payment of the premium and forward to the company whatever balance might be necessary. Contrary to the import of the provisions of the policy with regard to the dividends that the insured shall be entitled to elect to apply a dividend toward the payment of an ensuing premium, the provision in question, in regard to the company's application of the loan value to the payment of premiums, applies, by its own terms, only when a premium has

not been paid when due. It begins: "If any premiums shall not be paid when due," and then continues to provide that the company shall thereupon automatically apply the net loan value to continue the policy in force, provided it is sufficient to pay at least a quarterly premium. It is reasonably clear that in this connection the parties were contracting with regard to the contingency of the failure of the insured to pay a premium. The provision contemplates no action on the part of the insured, but provides for an automatic application of the net loan value to extend the life of the policy. Certainly it can not be reasonably said that by virtue of this provision the obligation of the insured is simply to pay only the balance after deducting any net loan value that the policy may happen to have at that time. It is true that the insured has the right to borrow from the company the net loan value of the policy, and he could, before the due date of a premium, apply to the company for a loan to be applied toward the payment of the premium; but we can not gather from the existence of this right under the contract that it was intended by the parties that the company, without any request from the insured, should notify him of the amount of the loan value of his policy, so that if it was insufficient to pay the next premium, and he desired to do so, he could borrow the amount available and remit the necessary balance. It may be true that the amount of the net loan value of the policy is a matter exclusively within the knowledge of the insurance company, but this alone is not sufficient to give rise to an obligation on the part of the company to give the insured this information, without any request therefor. Of course, if the insured should make a request and the company did not respond, a different case would be presented. The burden of keeping his policy in force by the due and prompt payment of the premiums rests upon the insured; and simple diligence on his part would require that if he desires to pay only the difference between the net loan value of his policy and the amount of the premium, he so notify the company and inform himself of the facts. While the giving of such information without request might be desirable, we can find no reason to hold, under the terms of the contract, that the insurer assumed such obligation. As was said by this court in *Southern Fire Insurance Co.* v. *Knight*, 111 *Ga.* 622, 632 (36 S. E. 821, 42 L. R. A. 70, 78 Am. St. R. 216): "The question is, what have

they agreed upon? If there was any room to doubt as to the intention of the parties, that construction which is most reasonable and most consonant with justice would be applied. But there is none."

It seems necessarily to follow, from our views as expressed, that the decisions in the *Brown* and the *Cooper* cases, supra, on which the majority opinion of the Court of Appeals in the present case is based, are erroneous. We can see no essential difference, under the terms of the contract, in regard to notice of the amount of loan value of the policy before the due date of the premium, so that the insured, if he desires to borrow it, may know how much need be paid to satisfy the premium, and notice, after he has failed to pay the premium, of how long the net loan value would carry the policy under the automatic clause. The duty of notice, under the terms of the contract, seems no greater in the one case than in the other. When the insured has failed to pay a premium when due, if he desires to exercise his right to continue his policy in force beyond the time of automatic extension, he should so notify the company in order that the necessary information can be forwarded to him. The company is not required to anticipate his desire to continue the policy beyond the term of extension after having failed to pay a premium.

■ In addition to the above ruling, the Court of Appeals held that the admitted net loan value of the policy was sufficient to extend the policy until September 23, 1934, before which date the insured tendered to the company a sum more than sufficient to fill out the quarterly premium and carry the policy until September 29, after the death of the insured, and that accordingly the policy had not lapsed. The Court of Appeals arrived at this conclusion by calculating the daily cost of the insurance at the premium stated in the policy, and dividing that sum into the net loan value. The company contends that the extended insurance was properly calculated at the then attained age of the insured. The plaintiff, in the allegations of her petition, did not seek to recover from the defendant on this ground, but simply on the failure of the company to give notice as already discussed. The fact is that the plaintiff alleged in her petition that the net loan value of the policy was sufficient to purchase extended insurance until August 6, 1934, which is the date calculated by the company.

358

This being true, the defendant was not called upon to defend this point in the court below. Accordingly, we are of the opinion that the Court of Appeals erred in upholding the petition on this theory.

*Judgment reversed. All the Justices concur, except Reid, C. J., and Atkinson, P. J., disqualified.*