## SOVEREIGN CAMP WOODMEN OF THE WORLD
### v. COOPER, executor.

No. 14049.   July 14, 1942.

*Anderson, Anderson & Walker* and *R. G. Plunkell,* for plaintiff in error.   *Harry S. Strozier* and *Mallory C. Alkinson,* contra.

REID, Chief Justice.   ■   Certiorari was granted in this case, by reason of the rulings made in the case of *General American Life Insurance Co.* v. *Butts,* 193 *Ga.* 350 (18 S. E. 2d, 542).   It brings under review first the rulings made by the Court of Appeals in *Sovereign Camp W. O. W.* v. *Cooper,* 62 *Ga. App.* 390 (8 S. E. 2d, 161), where the plaintiff's petition was tested and held good against demurrer.   At the time of that decision applications for

certiorari were subject to Rule 50 of this court, then of force. Code Supp. 1933, § 24-4554; 187 *Ga.* 843. In compliance with this rule, later repealed (190 *Ga.* 894), exceptions pendente were filed in the Court of Appeals, and the case was sent back for trial, upon which a verdict was directed in favor of the plaintiff, and upon the defendant's motion for new trial being overruled the case was again brought by bill of exceptions to the Court of Appeals, and the judgment was affirmed. *Sovereign Camp W. O. W.* v. *Cooper,* 66 *Ga. App.* 265 (17 S. E. 2d, 556). A full statement of the nature of the case, the pleadings, and the questions of law involved may be found in those two reports of the case. In the application for certiorari and in the exceptions pendente lite filed in the Court of Appeals error is assigned on the rulings of that court, which held that the petition stated a cause of action as against the grounds of demurrer urged, and which also held that a verdict for the plaintiff was demanded.

The plaintiff's petition as originally filed claimed a breach of the insurance contract by the defendant, by reason of its failure to notify the insured as to the time when the loan value on the policy was or would be exhausted in payment of the premiums, so as to permit him to resume their payment from his own funds. When the demurrer challenging his right to such notice under the contract was interposed, he filed an amendment setting up, among other things not here important, what he construed to be a course of dealing with reference to the manner of paying his premiums, established between him and the financial agent of the defendant, who was the clerk or secretary of its local camp, and a named bank through which payment was to be made. The pertinent portion of plaintiff's amendment was as follows: "5. By adding thereto a new paragraph, to be known as 16-A, as follows: Several years, at least three years, prior to the time when petitioner elected to avail himself of the automatic premium-loan provision of the certificate quoted in paragraph 10 of the petition, he entered into an agreement with his bank, the Bank of Eastman, at Eastman, Georgia, and with J. W. Bramblett, the Financial Secretary of the local camp of defendant, who was defendant's sole agent for the collection of membership dues, to the effect that said bank would pay such drafts as were drawn upon petitioner by the said financial secretary of defendant for the payment of the monthly amounts

due on said certificate of insurance, and to the further effect that the said Bramblett would present to the bank drafts for the payment of the required dues and assessments. Pursuant to such agreement over a period of at least three years, each month the said Bramblett would draw a draft on petitioner and present it to the said bank, which would pay the draft. So it was that a custom or course of dealings between petitioner and defendant was established for the collection of the said dues, assessments or premiums, and the said agreement above described was never revoked and was in full force and effect in January, 1935, and at all times thereafter. Petitioner further alleges that had defendant notified petitioner that the accrued cash value of said certificate had been or was about to be exhausted, or had the defendant even notified the said financial secretary or clerk of the local camp of that fact, the custom of payment herein described would have been resumed and there would have been no occasion on the part of defendant to attempt to abrogate and forfeit this contract with petitioner." While the grounds of demurrer to these allegations were overruled, the Court of Appeals did not expressly deal with them, having held that, irrespective of any such course of dealing, the plaintiff was entitled to notice as claimed, and that failure to give it constituted a breach of the contract on the part of defendant. On the second appearance of the case (66 *Ga. App.* 265, 17 S. E. 2d, 556) it was stated: "The rulings of this court on the former appearance of the case here established as the law of the case that the plaintiff's right to recover damages sustained by him because of the repudiation and cancellation of his contract of insurance, as alleged in the petition, was not based upon a consideration of whether or not there had been a course of dealings between the parties, entitling the insured to notice as to when the loan or cash value of the certificate would be exhausted, but that the right to recover was due to the fact that (1) there had become operative a provision of the certificate" (which was set out), although the recital of these contentions was contained in the statement of facts at pages 391 and 392 of 62 *Ga. App.*

An earnest effort is made by counsel for the plaintiff to show that even under the principles ruled in the *Butts* case, supra, the plaintiff in the present case was entitled to notice, as ruled by the Court of Appeals. While we have examined and considered these

contentions carefully, since, after stating the terms of the policy contract in this case (not then under review except in the abstract sense as precedent), this court said in the *Butts* case, supra (193 *Ga.* 357) : "It seems necessarily to follow, from our views as expressed, that the decisions in the *Brown* and the *Cooper* [this] cases, supra, on which the majority opinion of the Court of Appeals in the present case is based, are erroneous. We can see no essential difference, under the terms of the contract, in regard to notice of the amount of loan value of the policy before the due date of the premium, so that the insured, if he desires to borrow it, may know how much need be paid to satisfy the premium, and notice, after he has failed to pay the premium, of how long the net loan value would carry the policy under the automatic clause. The duty of notice, under the terms of the contract, seems no greater in the one case than in the other. When the insured has failed to pay a premium when due, if he desires to exercise his right to continue his policy in force beyond the time of automatic extension, he should so notify the company in order that the necessary information can be forwarded to him. The company is not required to anticipate his desire to continue the policy beyond the term of extension after having failed to pay a premium," and since we are convinced that this states a sound principle of law, there would seem to be no reason to further review the cases there considered and applied. We therefore hold that under the principles there ruled the Court of Appeals erred in holding that "Where a certificate of insurance in a fraternal benefit association provides for an automatic premium loan upon the failure of the holder of the certificate to pay the required monthly premium, the association can not cancel the certificate without notifying the insured, a reasonable length of time before the amount of the automatic premium loan made to keep the certificate in force would exhaust the cash value of the certificate, so as to afford the insured an opportunity to resume the payment of the monthly premiums and continue the certificate in force."

■ Having now held that the petition, in so far as predicated on failure of the association to give notice as to the exhaustion of the fund for payment of premiums, stated no cause of action, it must be determined whether the so-called course of dealing alleged by amendment would put the plaintiff in position to recover. The

amendment must be considered in connection with the other allegations as contained in the petition, and must be construed most strongly against the plaintiff. *Mason* v. *Nour*, 190 *Ga.* 62 (8 S. E. 2d, 14) *Pink* v. *A. A. A. Highway Express Inc.*, 191 *Ga.* 502 (13 S. E. 2d, 337). We have set forth above the entire allegation touching the course of dealing relied upon. It will be observed that the plaintiff had held his policy for many years, and that about three years before he discontinued making payments of his premiums he had an understanding with his bank and the financial secretary of defendant, whereby the secretary would each month draw drafts against him for the amount of dues or premiums due on the policy, and these drafts would be paid by the bank and charged to his account. It is not claimed in the amendment that the bank undertook any responsibility for their payment, except that it would recognize the right of the secretary to draw the drafts, the bank not being obligated to pay if Cooper did not have sufficient funds on deposit. There was no default, however, so long as this arrangement continued (for thirty-six months and until April, 1932). In the original petition it was alleged that "In April, 1932, defendant [plaintiff] was financially unable to pay the regular monthly premium theretofore paid for said insurance . . ," after which he "relied upon defendant to keep in full force and effect the said certificate of insurance" *by virtue of the automatic loan provision contained in the policy.* It is not shown whether any communication then took place between him and the financial secretary and the bank, nor is it contended that the financial secretary was or could have been a party at that time to any further understanding as to any subsequent resumption of the course of dealing then discontinued. It is alleged that "said agreement . . was never revoked, and was in full force and effect in January, 1935, and at all times thereafter," and that if drafts had in January, 1935, and thereafter been presented they would have been paid. But it is seen that from April, 1932, until January, 1935, there was actual and voluntary abandonment of any such practice or course of dealing. So far as appears from the allegations at this point the financial secretary and the bank were entirely eliminated, and reliance was then had, not upon this arrangement, but upon the association in virtue of the policy provision as to "automatic premium loan." So despite the allegation

that the agreement had never been revoked, when consideration is given to the other facts appearing it is clear that it was at least suspended, and no further reliance was had or manifested in reference to it before 1936, when inquiry was made of the association by the policyholder as to the status of his policy. When it is remembered that no new agreement with the financial secretary was alleged, and that the original understanding, so far as is alleged, did not contemplate a suspension and subsequent resumption of its operation, it also seems clear that not only did the association do all that was required of it, but its secretary also was without default. So it is not necessary to make any ruling on the legal effect of a "course of dealing" in such a situation, where it is relied upon by the policyholder as a justifiable excuse for failure to make premium payments. Strong reliance is placed by counsel for the plaintiff on the case of Sovereign Camp W. O. W. *v.* Piper, 93 Fed. 2d, 354, where in an opinion by Judge Sibley it was held that while, due to the terms of the policy and certain by-laws of the defendant association, the financial secretary could not waive requirements of the policy itself—one of which was, as in the instant case, that failure to make prompt payment of premiums would cause the policy to become null and void, yet since there was no provision as to the place and manner of payment, and since the financial secretary was the agent of defendant to receive payment, "If he agrees that money should be left for him at a stated place, say Higginbotham's, *and it is left there in time* [italics supplied], his failure to go thither and get it would not be a failure to pay. Such instances would involve no change in the insurance contract and no waiver of its provisions or estoppel to assert them. The required payments would have been made; in an unusual way, but in a way appointed by the collecting agent and not excluded from his authority." That ruling was made in a case from Texas, and it was stated: "It has been held by the Texas Supreme Court that in such circumstances it is the duty of the Sovereign Camp and of the financial secretary to give notice to the member of a refusal of the third person to pay, and a failure to give effective notice would estop to suspend the insurance for such refusal. Johnson *v.* Sovereign Camp, 125 Tex. 379 (83 S. W. 2d, 605)." What would be held by this court in a similar situation, in view of *Sovereign Camp W. O. W.* v. *Hart,* 187 *Ga.* 304 (200 S. E. 296), Sovereign Camp W. O. W. *v.*

214

Newsom, 142 Ark. 132 (219 S. W. 759), McCorkle *v.* Texas Benevolent Asso., 71 Tex. 149 (8 S. W. 516), and 14 A. L. R. 920, need not be now determined. It is sufficient, from what has been said above, to call attention that the situation of the parties in the present case is altogether different. If Cooper had not voluntarily, because of financial inability to pay, abandoned reliance upon the understanding with the agent, and if in April, 1932, the agent had failed to call upon the bank by draft for payment, we would have the situation of the Piper case, supra. Not so as it is. The prompt payment of assessments or premiums is essential to keep an insurance policy in force, no matter what may be the source of payment. *Mutual Life Insurance Co.* v. *Clancy,* 111 *Ga.* 865 (36 S. E. 944) ; *Stephenson* v. *Empire Life Insurance Co.,* 139 *Ga.* 82 (76 S. E. 592).

Under these principles, the Court of Appeals in its decision and judgment (62 *Ga. App.* 390, 8 S. E. 2d, 161) erred in holding that the plaintiff's petition, as amended, stated a cause of action; and the subsequent verdict and judgment based upon such petition must fall, and the last decision of the Court of Appeals (66 *Ga. App.* 265, 17 S. E. 2d, 556), following the former as the law of the case, must also be                    *Reversed. All the Justices concur.*