**AETNA LIFE INSURANCE COMPANY,**
Appellant,

v.

**Mrs. Margaret S. EILERS, Appellee.**

No. 4136.

Court of Civil Appeals of Texas at Waco.

April 25, 1963.

Rehearing Denied May 16, 1963.

Fouts, Moore, Williams & Caldwell, Joe E. Coleman, Houston, for appellant.

Nowlin Randolph, Houston, for appellee.

WILSON, Justice.

Insurer complains of order overruling its motion for summary judgment and sustaining that of the beneficiary, resulting in judgment for the sum alleged to be due on a life insurance policy, 12% damages and attorney's fees. The initial question is whether the policy permitted insurer to include interest "accrued", but not yet "due and payable", in computing insured's indebtedness secured by the policy so as to reduce the amount available for an automatic premium loan.

Insurer issued a $4000 policy of ordinary life insurance dated December 5, 1946. A premium of $27.72 was payable quarterly thereafter. The premium due September 5, 1961 was never paid. The effective automatic extended insurance clause provided that on default in payment of premium the insurance would be continued automatically as extended term insurance from the premium due date for the sum insured during the period fixed in a schedule, for the

corresponding cash or loan value; "except that if there is any indebtedness against the policy the extended term insurance shall be for the sum insured less the indebtedness and for such a period as the cash value less the indebtedness will purchase."

The effective automatic premium loan clause provided that the amount of any premium not paid before the end of the grace period would automatically be loaned by the company in payment of such premium and charged as an indebtedness secured by the policy "subject to interest from the end of the grace period on the same terms as prescribed for loans", if total indebtedness did not exceed the tabulated policy loan value. If loan value was insufficient, the automatic extended term insurance provision became applicable.

The material interest terms prescribed for loans, referred to in the foregoing clause, were:

"The loan shall bear interest at the rate of five per cent. per annum from the date the loan is granted and charged on the books of the Company. Interest shall accrue from day to day and shall become a part of the indebtedness as and when it accrues. Interest shall be due and payable at the end of each policy year except that if any amount of indebtedness is repaid, or otherwise liquidated, on a date other than the anniversary date of the policy, interest which has accrued for the portion of the current policy year on such amount shall immediately be due and payable."

On December 5, 1960 the total indebtedness against the policy was $866.90. At the end of the next grace period thereafter an automatic quarterly premium loan of $27.72 was made, as had been consistently done for several years. When the premium payable September 5, 1961 became in default, the 1961 interest accrued on the indebtedness to the end of the grace period, October 6, added to the principal indebtedness, made the unconsumed cash or loan value balance insufficient to meet the $27.72 September premium due. The insurer applied the remaining balance to purchase of extended insurance for the term from September 5 to November 18, 1961. Insured died November 21, 1961, the extended insurance having terminated three days before. The beneficiary says that although interest had "accrued" as the interest provisions for loans in the policy says, it was not then "due and payable" under that clause; and the insurer was not permitted to collect it in advance before the policy anniversary date of December 5 so as to reduce the available automatic premium loan value below $27.72 required to pay the quarterly premium due.

Art. 3.44, Insurance Code, Vernon's Ann.Tex.Civ.St., requires policies of life insurance to provide that the insurer may deduct from the loan value any "existing indebtedness", and that "existing indebtedness to the company on the policy" shall be deducted from the reserve in establishing the net value of a stipulated form of insurance in event of default in premium payment. The insurer's policy did this. It provided interest should *accrue from day to day* and should "become part of the indebtedness *as and when it accrues"*. Having *become* part of such indebtedness when it accrued, the fact that the interest had not matured by being "due and payable" did not prevent its application as indebtedness under the extended insurance and automatic premium loan provisions, and in our opinion it was properly included in computing the amount of indebtedness.

Appellee cites no authority for the position the accrued interest was not "indebtedness" until the anniversary date, and we have found none, construing similar policy provisions. The Supreme Courts of Massachusetts, Georgia and Alabama have decided the precise question as we do in Reynolds v. Nothwestern Mut. Life Ins. Co., 298 Mass. 208, 10 N.E.2d 70, 73, 113 A.L. R. 603; Phoenix Mut. Life Ins. Co. v.

Feeney, 193 Ga. 836, 20 S.E.2d 256; Equitable Life Assur. Soc. v. Brandt, 240 Ala. 260, 198 So. 595, 603, 134 A.L.R. 555. See also Sims v. Penn Mut. Life Ins. Co., 89 Ga.App. 650, 80 S.E.2d 499, 501; Baker v. Equitable Life Assur. Soc., 288 N.Y. 87, 41 N.E.2d 471, 472; 6 Couch, Insurance 2d, Sec. 32.249, pp. 481, 482; 3 Appleman, Insurance, Sec. 1936, p. 568.

Neither party has cited Walsh v. Aetna Life Ins. Co., 352 Pa. 429, 43 A.2d 102, 160 A.L.R. 620 (1945). It would militate against insurer and support appellee's contention, except for the fact the policy there omitted the very provision which makes the case inapplicable, and which distinguishes it from the present contract. Aetna there urged that appellee's position here would compel it to carry an unsecured loan. The court replied, "the company, experienced in such matters, should have provided for such a contingency in clear and unequivocal language or required the interest to be paid in advance." Texas Insurance Code, Art. 3.44, Sec. 6 requires the policy shall contain a provision that in computing "existing indebtedness" the company "may collect interest in advance" on the loan to the end of the policy year. Insurer did not take full advantage of this statutory authorization in the present policy, but it did do exactly what the Pennsylvania court suggested in the quoted reply: it provided interest should accrue from day to day and become a part of the indebtedness as and when it accrues, nothing impliedly similar to which was in the Walsh case policy.

■■ Appellee urges that insurer waived the provision that interest became part of the indebtedness as it accrued because its loan records show interest entries only on December 5, the anniversary date, for each of the preceding eleven years. So long as the policy reserve was adequate there was no necessity for, or accounting propriety in doing otherwise. The contingency that total indebtedness equalled or exceeded and exhausted the net loan value,

after deducting an unpaid premium, had never previously arisen. There was no waiver. Waiver could not exist until an occasion arose for intentional relinquishment of a known right. Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865; Texas & Pacific Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652.

■ Appellee seeks to defend the judgment on the ground appellant failed to notify insured it was taking action which would result in automatic extended term insurance which would terminate November 18, 1961. If notice was necessary, the record presented might be said to make an issue of fact as to whether it was given, thus precluding summary judgment for appellee in any event. Insurer's affidavits attached copies of correspondence shown to have been written and mailed to insured on August 1, 1961 calling attention to the fact that there would not be sufficient value to pay the September 5th premium by loan, and that remittance would be necessary before end of the grace period to keep the policy in force; and on October 18, enclosing reinstatement application forms. Appellee's affidavit recited she "had no recollection of seeing any envelopes" from insurer other than the September 5th premium notice, and that "to the best of my knowledge no further correspondence was received", until the time of insured's death.

We find no requirement in the policy, however, for such notice. The only notice requirement relates to non-payment of interest, providing it "shall render the policy null and void thirty-one days after notice shall have been mailed." Appellee cites cases, here inapplicable, concerning requirements for notice of cancellation, but none supporting the contention that a notice default in premium payment would effect automatic extended term insurance was required. The contract itself made the extended term available "automatically", that is, self-operative at a predetermined point agreed upon. Art. 3.44, Insurance Code, requires the policy to secure a stipulated

form of insurance in event of default in premium payment; to stipulate the amount, term and method of computing reserve; and to provide that in default of premium "the value of the policy shall be applied to the purchase of other insurances." This the policy did.

The brief time intervening between termination of automatic extended coverage and insured's death makes this case one in which we confess caution approaching reluctance in yielding to the compulsion of the unambiguous terms of the contract, the statute, and decided cases. The same result must follow here as if the intervening time had been weeks or months instead of days, for identical principles must be applied to such cases in the future. Although no authority is cited which supports appellee's notice theory, we have done extensive research. It was thought American Nat. Ins. v. Brown, 58 Ga.App. 70, 197 S. E. 658 (1938), discussed 129 A.L.R. 1108, might afford analogous authority for appellee's view. We find, however, the Supreme Court of Georgia directly overruled that case in General American Life Ins. Co. v. Butts, 193 Ga. 350, 18 S.E.2d 542, 545, 140 A.L.R. 677 (1942), holding in the same situation that since there was no policy provision requiring notice, the insurer had no such obligation. So held the Supreme Court of Tennessee in Mills v. National Life Ins. Co., 136 Tenn. 350, 189 S. W. 691; and the Court of Appeals of Georgia in Sims v. Penn Mut. Life Ins. Co., 89 Ga.App. 650, 80 S.E.2d 499, 500.

■ Since the judgment must be reversed, appellant's other points which, if sustained, would require remand, become immaterial. We are directed by Rule 434, Texas Rules of Civil Procedure to render the judgment which should have been rendered on appellant's motion for summary judgment, that plaintiff take nothing, since both parties made such motions. Tobin v. Garcia, 159 Tex. 58, 316 S.W.2d 396, 400; Gulf, Colorado & Santa Fe Ry. Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492, 496; Catholic Charities, etc. v. Harper, 161 Tex. 21, 337 S.W.2d 111, 115. Reversed and rendered.