**GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Appellant,**

**v.**

**Sherrill Brandt TURQUETTE, Appellee.**

**No. 4955.**

Court of Civil Appeals of Texas, Waco.

Nov. 19, 1970.

Rehearing Denied Dec. 8, 1970.

Locke, Purnell, Boren, Laney & Neely, Larry M. Lesh, Dallas, for appellant.

Dalton, Moore, Forde, Joiner & Stollenwerck, Sam S. Stollenwerck, Wm. J. Adams, Dallas, for appellee.

OPINION

WILSON, Justice.

The sole question in this non-jury life insurance case is whether the record au-

thorizes the trial court's determination that the insurer is estopped to deny liability because of its "representation" concerning the amount of insured's indebtedness. In our opinion the record does not sustain the conclusion, and we reverse.

The life insurance policy issued by appellant provided that dividends should accumulate at interest. It contained an automatic premium loan clause providing that any premium, less dividends, and any unpaid interest would be loaned by the insurer and charged as an indebtedness secured by the policy, "provided that the loan value (after deducting any indebtedness to the company on this policy) then available is sufficient to pay such premium and interest then due". This clause was subject to the policy section relating to loans, which limited the amount of loans to the amount of the cash surrender value less interest to the end of the current policy year and existing indebtedness.

The policy stipulated that in the event of default in payment of premium, and if the automatic premium loan was not applicable, insurance would be continued as non-participating, paid-up, extended term insurance reckoned from the due date of the premium in default, and for the period for which the cash surrender value less existing indebtedness would purchase single-premium term insurance.

The anniversary date of the policy was July 18. The premiums of $73.87 were payable monthly on or before the 9th day of each month. Less than a year after the policy became effective insured commenced paying premiums by automatic premium loans, all monthly premiums for the period from October, 1965 through June, 1968 being so paid.

The insurer's statement of its procedure, which appellee states is substantially correct, is as follows:

"On September 24, 1968, approximately 67 days after the due date of the July 18, 1968 premium, an employee of Guardian's pre-mium collection department recorded and transmitted to the premium records department information showing that premiums on the policy were paid to July 18, 1968. In the policy values department, an employee completed a 'Termination with Value' form reflecting that as of July 18, 1968, the policy had a net value of $72.14, comprised of cash surrender value of $2,-620.25 plus dividend accumulations of $483.42, less an outstanding indebtedness on the policy of $3,031.53. This net value was insufficient to pay either the monthly premium of $73.87 or the accrued and unpaid loan interest of $144.30. Accordingly, the policy was continued as non-participating, paid-up, extended term insurance for 105 days, i. e., the period which $72.14 would purchase as a net single premium. This term insurance expired October 31, 1968. Each year Guardian mailed to its policy holders notices reflecting the status of their policies. Although the notices were designed to indicate the status of policies as of the policy anniversary dates, they were mailed 18 to 20 days prior to the policy anniversary dates due to a requirement of New York law. These notices stated on the reverse side thereof that 'The sending of this notice does not change any of the terms of any contract or waive a lapse or the payment of any amount which may be overdue.' Two such notices were introduced in evidence: (1) the notice mailed by Guardian on July 1, 1967 indicating the status of the policy as of its July 18, 1967 anniversary date; and (2) the notice mailed by Guardian on July 1, 1968 indicating the status of the policy as of its July 18, 1968 anniversary date." Insured died March 29, 1969.

The "representations" which the trial court concluded gave rise to estoppel are contained in the July, 1968 anniversary notice mailed July 1, 1968. It stated the amount of indebtedness "as of July 18, 1968" was $2,809.01. At the time the notice was sent this "representation" was true, and the amount of indebtedness was correctly stated in the same manner it had

been in the past. The insurer thereafter did nothing to alter the truth of that statement; the insured did. He failed to pay the July premium in cash by July 9, 1968, as he had contractual right to do, and thereupon the automatic premium loan provision of the policy for which he had contracted effected an automatic loan for that premium. The indebtedness as of July 9 thereby increased automatically to $3,031.53 in accordance with the terms of the policy, which then became the altered amount due as of July 18. The automatic premium loan paid premiums only through October, 1968.

■ In the absence of a policy provision requiring notice to insured that the failure to pay the premium made effective the automatic premium loan which would result in extended term insurance, as here, no notice was necessary. Aetna Life Insurance Co. v. Eilers (Tex.Civ.App.1963, writ ref.), 367 S.W.2d 732, 736.

■ There is nothing in the record to suggest insured relied on the statement of what the amount of indebtedness would be on July 18, and before a new loan was effected, or altered his position as a result thereof. There is nothing to indicate insured was not familiar with terms of the policy, which the notice relied on expressly stated were not changed thereby. The essential elements of estoppel do not exist.

The judgment is reversed and here rendered that plaintiff take nothing.