## BROWN et al. v. PENNSYLVANIA CANAL CO. et al.

(District Court, E. D. Pennsylvania. July 6, 1921.)

### No. 677.

Corporations ⊂⇒482(8)—Proceeds on foreclosure distributed severally to bondholders, and where bondholders do not appear, part apportioned to their bonds not found cannot be claimed by other bondholders.

Where, in a suit by a bondholder to enforce a mortgage, in which all other bondholders were permitted to intervene, on recovery, the total amount due to all bondholders was paid into court, such fund is not a common fund, but belongs to the bondholders severally in proportion to their holdings, and where the holders of some of the bonds have not appeared and the bonds have not been found, the other bondholders have no claim to the part of the fund apportioned to them.

In Equity. Suit by Alice Francis Brown and others against the Pennsylvania Canal Company and others. On report of master on petition for supplementary decree of distribution. Report not confirmed, and petition denied.

See, also, 244 Fed. 980.

Thomas Raeburn White, of Philadelphia, Pa., for certain bondholders.

DICKINSON, District Judge. The point involved is disclosed by an outline statement of the fact situation. The cause of action upon which the judgment in this case was recovered fully appears in the cases reported in 229 Fed. 444 and 235 Fed. 669, 149 C. C. A. 89.

The foundation of the plaintiff's claim was that she held the bonds of the Pennsylvania Canal Company, secured by a mortgage of the canal property of the obligor. The sum recovered was for her benefit, but all the other bondholders in like situation with her were brought in as parties to the proceeding by leave given to them to intervene. The total sum due to all the bondholders was paid in full, and distribution has been made to all those who appeared to make proof of their holdings. Before suit brought the practical situation was that for a number of years the bonds were regarded as of no value. No interest had been paid, and as a consequence holders lost sight of the fact that they were holders, and the obligor lost touch with the obligees. The result of the litigation which produced the moneys now in court, of course, revived the interest of the holders of the bonds, with the result that all of them have appeared to make proof of their holdings, with the exception of the holders of 32 of the bonds. The holders of these bonds are as yet unknown. The master appointed by the court has made every

possible effort to locate these bonds, with the result that the finding is justified that neither the bonds themselves nor the persons to whom they belong can be found, and that every effort to find them has been exhausted.

This fact situation is made the basis for the present application, which is that the moneys found to belong to these unknown holders be distributed to and among the bondholders who have appeared. The learned master recommends favorable action upon the petition, and has accompanied his recommendation with a discussion of the considerations which have moved him to make the recommendation he has made.

If the present motion presented the case, such as the master has viewed it to be, of a fund upon which a number of persons had a common claim, we would be in full accord with all of the conclusions reached by him. They are in effect, first, that the court having control of a fund, with the duty to make distribution, possesses the power to call upon all persons having claims upon the fund to present and make proof of their claims within a required time, or be thereafter debarred from making such claims, and then at the expiration of the time to make distribution of the fund to and among those who had proven their right thereto. Such a situation is frequently presented. We have it in the common case of the distribution of the moneys in the hands of an executor or administrator, representing the balance of a decedent's estate for distribution as shown by his account filed.

Another illustration is of a fund raised by execution process, upon which there are common claimants, because of a lien or otherwise, upon the property which has by execution been converted into money. There are many such illustrations. The power of the court is clear enough, because it is one of necessity. The duty of the court to exercise this power in the case of such a common fund is likewise sufficiently clear.

We are not convinced, however, that the present fund is of the kind or character to which these principles of law apply. The possession of the fund here is merely incidental to, and in a sense an accident of, the original proceeding. This was essentially a suit by the original plaintiff against the defendants named, in which she recovered a judgment. The proceeding, being in equity, was unhampered by the forms and restrictions to which it would have been subjected as a suit at law. It was in consequence expanded, so that other suitors, circumstanced as was the plaintiff, might be joined with her in that suit and recover the judgment to which each was entitled. The decree would necessarily have taken the form of a money decree, or essentially a judgment in favor of each of the plaintiffs to whom an award would have been made, and the amount of the award would have been controlled by the extent of the bond holdings of each. It would have been in essence a judgment of each bondholder against the defendants.

The accidental circumstance of which we speak was the fact that the defendants, in satisfaction of all the judgments against them, paid the total sum into court. The legal situation is precisely the same as if the money in court had been raised by execution process. A further

legal consequence is that each plaintiff was entitled to take out of court the sum to which he or she was entitled, and incidentally this was measured by each plaintiff's proportionate holdings of the bonds. In this sense each bondholder was entitled to a share in the fund, but accurately speaking each plaintiff did not share in a common fund, but each was entitled to receive the amount of the judgment each respectively had recovered. The share of each was not strictly a share in the fund, but was measured by what was the arithmetical equivalent of such share.

It follows that the legal situation presented is this: A large number of creditors have each secured judgments against common defendants. The defendants, in satisfaction of the judgments, have paid into court a total sum, which is the aggregate amount of all the judgments. Some of the plaintiffs have come forward to demand and receive that part of the fund which represents their judgments. Others of the plaintiffs have not appeared. The question presented, then, is: What right have those who have appeared and who have received payment of their judgments to demand the moneys which belong to those who have not appeared? We are unable to see that any such right exists. The only plausible basis for it is that the plaintiffs who have appeared, having judgment against the defendants, have a right to satisfaction out of any property of the defendants.

The answer to this is that the moneys in court are not the moneys of the defendants, but of the missing bondholders. American v. Grand Rivers (C. C.) 159 Fed. 775, sustains this distinction. The fund there was the property of the defendants, against which the plaintiffs had a claim in common. Here, as before stated, the moneys belong to the holders of the bonds. The only sense in which it is a common fund is as a convenient mode of expression to convey the thought that each plaintiff has a like claim to his or her part of the fund. The claims are like rather than common. It may well be that the effect of the failure of the parties to whom the remnant of the moneys in court belong to appear will be its practical escheat to the United States, because this practical result will follow from the requirement that, after a given time, all funds in the registry of the court be turned into the treasury of the United States.

The feeling on the part of the bondholders who have appeared that their claims upon these moneys is a better claim than that of the United States is a natural feeling, and there are obvious considerations which give encouragement to it. The fact, several times emphasized, remains, however, that the moneys which are in court were awarded, not to them, but to other bondholders who have not appeared. The absentees may at any time present themselves, although their appearance has become now barely more than a possibility. If and when they do appear, the moneys belonging to them should be here for them. If they never appear, the claim of the United States to the money is as well founded as that of any one else, and is a better claim by reason of the fact that no one else has any claim.

The effort which the master has made to find the owners of all bonds has met with much, although only partial, success. The labor

connected with it has been great, and has extended over a long time, and the calls upon his attention have been many and frequent. This phase of the case was not in contemplation at the time his compensation was originally fixed. It is not only just and fair, but it is necessary, that the fund should bear the cost and expense of the efforts made to find its owners, included in which is fair compensation to the master for the very faithful and efficient work which he has performed. This compensation is now fixed at $2,500, which is taxed as part of the costs which this fund should bear, and a decree may be drawn awarding this to the master.

The petition for a decree awarding the fund in court to the petitioners is denied, as is also the motion to confirm the report of the master, and exceptions are allowed to the petitioners.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes