DRASCOVICH v. EQUITABLE TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1925.)

No. 4267.

Railroads ⬤—197 — Bondholders, presenting bonds prior to certain date, not entitled to share in interest on fund which has accrued subsequent thereto.

Holders of railroad bonds, presented prior to certain date to special master, who had been directed to pay from proceeds of mortgage foreclosure sale definite amounts to bondholders, *held* not entitled to share in interest on fund which had accrued subsequent to such date on

amounts held for payment of unpresented bonds, in view of Rev. St. §§ 995, 996 (Comp. St. §§ 1644, 1645).

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Edward S. Farrington, Judge.

F. M. Angellotti and C. W. Dooling, both of San Francisco, Cal., for appellant.

M. A. Thomas, Jared How, and Pillsbury, Madison & Sutro, all of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and RUDKIN, Circuit Judges.

MORROW, Circuit Judge. On June 28, 1916, all the property of the Western Pacific Railway Company was sold at a foreclosure sale under a first mortgage securing first mortgage 5 per cent. 30-year gold bonds of the Company in the sum of $50,000,000. The minimum price at which the property could be sold was fixed by the decree at $18,000,000. Francis Krull was appointed special master, to make the sale, receive the proceeds thereof, and apply such proceeds in accord with the terms of the decree and order of the court supplementary thereto.

On August 29, 1916, and September 6, 1916, orders were duly made in said cause, confirming the report of the receivers in said action, and determining, and ordering paid from the funds in the hands of the special master, the amount of compensation of the receivers and their counsel, fixing the amount of expense and compensation of the plaintiff trustee and its counsel, and ordering the payment thereof from said funds in the hands of the special master, and fixing the compensation of the special master to be paid, upon the completion of his duties, out of said funds.

After deducting from the $18,000,000 the amount necessary for and paid in cash on account of the expenses and charges, there remained $17,727,725.55 available to all the holders of the first mortgage 5 per cent. 30-year gold bonds of the railway company. By the terms of said order all of the moneys in the hands of the special master under said decree, including interest on said moneys while in the hands of the special master to October 28, 1916, were disposed of, save and except $7,000 theretofore allowed and reserved for payment for the services of the special master.

On May 19, 1923, the special master filed his report, showing that since October 28, 1916, interest in the amount stated and which had never been disposed of by any order of court had accrued on money in his hands for the purpose of paying the amount ordered paid on bonds not utilized in the purchase, and also on the $7,000 reserved for the payment of the special master. The special master asked that he be directed in the distribution of said interest. A supplemental report of the special master, filed September 25, 1923, showed interest to the amount of $18,847.79.

On August 16, 1923, S. Walter Drascovich, the owner of bonds amounting to $11,000, was allowed to intervene, praying that the interest in the hands of the special master be distributed ratably amongst the owners of the bonds amounting to $50,000,000. On December 15, 1923, the District Court denied the claim of the intervener, decreeing that holders of bonds presented to the special master prior to October 28, 1916, for payment, were not entitled to any part of said balance of accrued interest, and that the special master pay the whole interest to the holders of bonds not yet presented, and to the holders of bonds presented to the special master after October 28, 1916, and that any balance of said interest remaining in the hands of the special master after March 1, 1924, together with the unclaimed portion of the fund in the hands of the special master for the payment on account of principal of bonds not yet presented, be paid by the special master into court, to be disposed of according to the provisions of sections 995 and 996 of the Revised Statutes, as amended (Comp. St. §§ 1644, 1645). Intervener appeals.

It is contended on behalf of the appellant that the fund in controversy is an undistributed common fund. The agreed statement of the case on appeal does not support this contention. It is there stated that, having deducted from the $18,000,000 purchase price the amount necessary for, and paid in cash on account of, expenses and charges, there remained $17,727,725.55 as the total amount available from said purchase price to all the holders of said first mortgage 5 per cent. 30-year gold bonds of said railway com-

pany for principal and interest, said amount being adjudged to be $35.455451 per $100 face amount of said bonds, or $354.55451 per $1,000 face amount of said bonds; that is to say, the purchase price of $18,000,000 was paid into court in special trust for a particular purpose and that purpose was, after deducting from the purchase price of $18,000,000 the amount of necessary expenses, to pay to all the bondholders the specific sum of $35.455451 for each $100 bond, and $354.55451 for each $1,000 bond, this being the pro rata distribution of the purchase price among all the bondholders after deducting the expenses of the foreclosure proceedings.

In the order of October 11, 1916, the court goes further and requires the stamping by the special master of all the bonds used in the purchase, viz. $47,301,600 face amount, the fact of payment thereon of the said portion thereof, viz. $35.455451 per $100 face value and $354.55451 per $1,000 face value from the proceeds of said foreclosure sale. The court also directs to be paid to the holder of such of said bonds as were not used in said purchase, to wit, $2,698,400 face amount of said bonds, upon presentation thereof to said special master the payment of the sum properly allowable thereto; that, upon the payment of the amount required to be paid under the terms of said order, the special master should stamp thereon the fact of payment of the said sum of $35.455451 per $100 face amount, or $354.55451 per $1,000 face amount, thereof. This was the carefully devised pro rata distribution by the court of the purchase price to the two general classes of bondholders who were proportionate beneficiaries in the fund, viz.: (1) Those who used their bonds in the proportion named for the purpose of making the purchase; and (2) those who did not use their bonds in making the purchase, but who did accept the pro rata payment in cash in the same proportion as those in the first class.

The argument that no part of the fund ever became the money of the bondholder until withdrawn by him may be conceded as a strict legal right, but we are dealing with the broader question of an equitable proceeding. The purchase price of $18,000,000 was, as we have said, a trust fund in the hands of the special master for a specific purpose, viz.: (1) To pay the expenses and other charges that were required to be paid in cash out of the proceeds of the sale; (2) to stamp all bonds used in the purchase of the property the fact of payment there-

on of the said portion thereof, namely $35.455451 per $100 face value, and $354.55451 per $1,000 face value, thereof; (3) to pay to the holders of such bonds as were not used in the purchase the portion of the purchase price properly allowed thereto, being $35.455451 per $100 of the face amount, and $354.55451 per $1,000 face amount, thereof. The pro rata distribution of the fund to each bond was separate and distinct, and determined by the court in an exact mathematical calculation. The order created an equitable right to the pro rata distribution of the fund, by attaching the right to each bond by its denomination, in the hands of the individual bondholders, and not to all the bondholders or bonds collectively, or as designated by class.

By the terms of the decree all the money in the hands of the special master, including interest on said moneys while in the hands of the special master to October 28, 1916, were thereby disposed of by specific and individual distribution to the beneficiaries. It follows that funds left in the hands of the special master after October 28, 1916, and not withdrawn by the beneficiary entitled thereto, were funds belonging equitably to the beneficiaries in the proportionate distribution ordered, and if the special master, under the order of the court, kept such money on deposit in bank at interest, such interest belongs in equity to the beneficiaries identified by the order, whose money was left in the hands of the special master and earned the interest.

Two cases are cited as bearing on the question under consideration. The first is that of American Loan & Trust Co. v. Grand Rivers Co. (C. C.) 159 F. 775. Property of the corporation had been sold in foreclosure proceedings instituted in the interest of bondholders. Most of the bonds were taken up in a reorganization scheme, but some of the bonds were not included in the arrangement. The court ordered a sum of money in court to be distributed pro rata to the latter bondholders. A small balance of that fund remained in court for 14 years. The attorney for the United States moved the court for an order to deposit this money in a designated depositary to the "credit of the United States under section 996 of the Revised Statutes of the United States," which provided that money which had remained in the registry of the court unclaimed for ten years or longer should be deposited in a designated depositary of the United States "to the credit of the United States." The claim was that the unclaimed money in

the registry of the court had escheated to the United States. The court held that this statute, in so far as it required money deposited in a federal court unclaimed for 10 years to be turned over to the United States, was unconstitutional, as depriving the owners thereof of their property without due process of law. The court discusses this question at length, and concludes by denying the motion of the United States attorney.

By the Act of March 3, 1911 (36 Stat. 1083), the unconstitutional feature of this statute was eliminated by an amendment to section 996 of the Revised Statutes, providing that moneys paid into court and deposited in the treasury of the United States for at least five years unclaimed shall be deposited to the credit of the United States, provided that, upon notice to the United States attorney and full proof of right thereto, any person entitled to such money may, on petition, obtain an order of court directing the payment of such money to the claimant. The amendment left the unclaimed fund subject to the order of the court, thereby in effect repealing the escheating clause of the statute.

There is no claim of escheat in the present case. The court, in its decision, referred to the possibility that the holders of the bonds entitled to the unclaimed funds in the registry of the court might not make such a claim; then the court declared it should, by redistribution, be paid to (1) the other bondholders, or, if not, then to (2) the general creditors, if any, of the corporation, or, if none, then to (3) the holders of the capital stock in the defendant corporation. It does not appear that any of these parties had made claim to the unclaimed fund in the registry of the court, or in fact that any of the parties were before the court upon that question.

The petitioner contends that this declaration or statement of the court supports his claim in this case. It is sufficient answer to such claim that the question of such a possible redistribution of the unclaimed fund some time in the remote and undetermined future was not then before the court, nor were the parties to that question, and we know of no rule making an opinion of the court delivered upon a question not in issue of value as an authority.

The next case is that of Brown v. Pennsylvania Canal Co. (D. C.) 274 F. 467. This was a suit to foreclose a mortgage. The total amount due to all the bondholders was paid into court. The bondholders appeared and made proof of their holdings, except the holders of 32 bonds, who at the time of the hearing were unknown. The master appointed by the court had made every effort possible to locate the bonds, with the result that the finding is justified that neither the bonds themselves nor the persons to whom they belonged could be found, and that every effort to find them had been exhausted. Application was thereupon made to the court that the moneys found to belong to these unknown holders be distributed to and among the bondholders who had appeared. The court held that the unclaimed fund in court was not a common fund, but belonged to the bondholders severally in proportion to their holdings, and that, where the holders of some of the bonds have not appeared and the bonds have not been found, the other bondholders have no claim to the part of the fund apportioned to them.

The court, in determining this question, said:

"Here, as before stated, the moneys belong to the holders of the bonds. The only sense in which it is a common fund is as a convenient mode of expression to convey the thought that each plaintiff has a like claim to his or her part of the fund. The claims are like, rather than common."

Referring to the question of escheat involved in American Loan & Trust Co. v. Grand Rivers Co., supra, the court, apparently unaware of the amendment to the statute, said:

"The feeling on the part of the bondholders who have appeared that their claims upon these moneys is a better claim than that of the United States is a natural feeling, and there are obvious considerations which give encouragement to it. The fact, several times emphasized, remains, however, that the moneys which are in court were awarded, not to them, but to other bondholders, who have not appeared. The absentees may at any time present themselves, although their appearance has become now barely more than a possibility. If and when they do appear, the moneys belonging to them should be here for them. If they never appear, the claim of the United States to the money is as well founded as that of any one else, and is a better claim by reason of the fact that no one else has any claim."

This last statement is modified by the amendment to the statute, as before stated. The case was appealed to the Circuit Court of Appeals for the Third Circuit, where the decree of the District Court was affirmed, the appellate court saying (279 F. 417, 418):

"We find no error in the court's action. The burden certainly rested on the petitioning bondholders to show a right on their part to the pro rata share of the fund which belonged to their fellow bondholders. They have not done so, and we are therefore unable to see by what means the ownership of the nonappearing bondholders was transferred or forfeited to those who did appear. We are shown by the provisions of the mortgage no interest one set of bondholders had in the bonds of another set of bondholders. * * * Indeed, if the trust fund theory be urged, it will be seen that the trust imposed on the court was to hold and distribute to each bond, and therefore for each bondholder, the pro rata payable to it or him. Certainly no such trust as is here contended for was expressed in the mortgage, and we see no ground for implying one. In the absence of any proven title or claim of title of these petitioning bondholders to the pro rata share of their fellows in the fund, we follow and affirm the action of the court below."

These two cases, and the statute of the United States, relate to a different phase of the question, but, upon principle, support the views we have expressed in this case.

The decree of distribution made by the court below was, we believe, in accordance with sound equitable principles, and the decree is accordingly affirmed.