Rosa MAYER, as Administratrix of Benjamin Mayer, deceased, Plaintiff,

v.

CHASE NATIONAL BANK OF The City of NEW YORK, as Trustee, etc., Western Pacific Railroad Corporation, et al., Defendants.

United States District Court
S. D. New York.
Sept. 6, 1955.

84

Robert M. Cowen, New York City, for plaintiff.

Milbank, Tweed, Hope & Hadley, New York City, William Eldred Jackson, New York City, of counsel, for defendant trustee.

Bernard Cowen, New York City, for defendants Western Pac. R. Corp., et al.

Eugene H. Nickerson and Abraham J. Gellinoff, New York City, Sp. Gdns. for unknown bondholders.

Jacob K. Javits, Atty. Gen. of New York, for Comptroller, Joseph H. Flynn, Asst. Atty. Gen., of counsel.

RYAN, District Judge.

Plaintiff bondholder moves for summary judgment in this declaratory judgment suit filed against defendant Trustee and certain named bondholders. The question presented is the proper distribution, as between various bondholders having different interests, of a fund held by defendant Trustee under a mortgage se-

curing bonds issued by the Western Pacific Railway Company. The fund consists of the unclaimed balance of seven separate distributions made available to the bondholders from the proceeds of a money judgment recovered by the Trustee against the guarantor of these bonds. The complaint seeks a determination by the court that all classes of bondholders are adequately represented so as to cause a decree to be binding on all, and an instruction to the Trustee that it pay over to plaintiff and the known bondholders these unclaimed moneys. The answer of the Trustee asks that the court determine whether in the light of applicable principles of equity a decree may properly be rendered directing that the fund be distributed to the holders of bonds who come forward to claim their distributive share. It does not support or oppose the motion.

Jurisdiction is predicated on diversity —plaintiff is a citizen of the State of Maryland and defendant Trustee a New York corporation. The corpus of the fund amounting to $21,649.65 is on deposit in this district. This court has jurisdiction over the parties and the subject matter.

This suit was filed on April 14, 1954; on April 23, 1954, on motion of plaintiff and by order of the court notice of the pendency of this suit was given by publication and copy of the notice was mailed to the known bondholders who had shared in all seven distributions. Several bondholders thereafter appeared and answered the complaint, joining with plaintiff and the original defendant bondholders in the prayer for distribution. Although these known bondholders appear as formal defendants they are aligned in interest with plaintiff.

On June 1, 1954, on motion of the Trustee additional notice of the pendency of this suit was given by publication to those bondholders who had not received all seven distributions and two attorneys were then appointed by the Court as special guardians, one to represent those bondholders who had shared in some though not all distributions and the other, to represent those who had shared in none. The special guardians oppose the granting of this motion for summary judgment on the ground that neither under the indenture nor under applicable principles of law may the rights of the bondholders they represent be cut off in favor of and to the sole benefit of the known bondholders.

No issue of fact is presented.

The following facts appear undisputed. Western Pacific Railway Company and the predecessor trustee to defendant entered into a mortgage dated September 1, 1903 to secure the payment of principal and interest on a $50,000,000 bond issue known as First Mortgage Five Per Cent Thirty-Year Gold Bonds due September 1, 1933. On the same day a contract of guaranty for the payment of interest and stipulated sinking fund was entered into between the predecessor of the Denver and Rio Grande Railway Company as guarantor, and Western Pacific and the trustee. Upon the default of Western Pacific in the payment of interest, the trustee on March 2, 1915 filed suit in the United States District Court for the Northern District of California Equitable Trust Co. of New York v. Western Pac. Ry. Co., 233 F. 335, for foreclosure of the mortgaged property and recovered on the foreclosure sale the sum of $17,727,725.55, from which there resulted a pro rata distribution on each $1,000 bond of $352.89. On March 27, 1915 suit was filed in this court by the trustee against the guarantor on its contract. The trustee recovered a judgment in that suit of $38,270,343.17, out of which there was made available in seven separate and additional distributions, commencing September, 1918 and terminating June 30, 1925, the total sum of $393.50 on each $1,000 bond. Equitable Trust Co. of New York v. Western Pac. Ry. Co., D.C., 244 F. 485, affirmed sub nom. Equitable Trust Co. of New York v. Denver & R. G. R. Co., 2 Cir., 1918, 250 F. 327. Although that action was tried on the equity side and the complaint was referred to as be-

ing on a "dependent bill in equity, ancillary to a bill of foreclosure," the judgment recovered was based on the contractual liability of the guarantor. On Appeal the judgment was affirmed but the cause was ordered transferred to the law side of the court and the various injunctions were vacated. The Court of Appeals held that plaintiff had brought in equity what was an action at law on a contract and that all it had recovered was a money judgment for such breach.

Plaintiff and all bondholders appearing herein have received a total pro rata share on each $1,000 bond of $746.39 ($352.89 on the foreclosure sale in California, and $393.50 from the judgment in this court), leaving unpaid on the principal of each bond the sum of $253.61. No bondholder has received full payment.

It is the undisbursed balance of the funds collected on this judgment (as of November 17, 1953 it amounted to $21,649.65) which plaintiff and the bondholders seek to have paid to them.

The distribution of this fund is controlled by the terms of the Trust Agreement of 1903; the fund was never and is not now in the custody of the court.

The question presented is whether after the passage of thirty years the rights of unknown bondholders to their pro rata share under the indenture may be cut off by a distribution to present, known bondholders, who represent bondholders owning about 95% of the outstanding bonds.

The trust was created "for the equal and proportionate benefit and security of all holders of the bonds and interest coupons issued and to be issued under and to be secured by this indenture." Section 9 of Article 4 of the indenture provides that any moneys received by the Trustee "shall forthwith be applied by the Trustee to the payment *pro rata* of the amounts remaining due for principal and interest upon the bonds secured hereby and then unpaid in whole or in part"; and that "the amount so payable shall in each case be paid only upon presentation of the bond. * * * and the amount of such payment shall be endorsed thereon." Section 13 of Article 5 provides for payment "in every instance to be made ratably, and without any preference or priority, upon presentation of the respective bonds", and Section 15 that the Trustee "shall not be bound to recognize any person as a bondholder unless and until his title to the bonds held by him is proved in the manner prescribed." The indenture makes no provision for forfeiture of the bonds for non-presentation and is silent as to the course to be followed by the Trustee in case of impossibility of compliance with the above directions.

The terms of the indenture have been construed by the United States District Court for the Northern District of California, which entertained the in rem foreclosure suit, and the Court of Appeals for the Ninth Circuit, as setting up an equitable right to pro rata distribution in favor of each individual bondholder and not in favor of all the bondholders as a class. Drascovich v. Equitable Trust Co. of New York, 1925, 3 F.2d 724. There, a bondholder who had received his proportionate share of the proceeds of the foreclosure sale, petitioned the court for a distribution of the interest which for a period of seven years had accumulated on the balance of the fund payable to non-appearing bondholders. The Court held that the burden of establishing a right to the pro rata share of the fund belonging to the other bondholders who had failed to claim it had not been sustained by petitioner and denied his petition. Whether the comparatively brief period of time the fund had remained unclaimed (7 years) prompted the Court is not apparent from the decision; in any event, in December, 1953, upon a subsequent petition filed by plaintiff here and present bondholders the district court in California distributed to them pro rata the balance of that fund.

In American Loan & Trust Co. v. Grand Rivers Co., C.C., 159 F. 775, the

balance of a fund from a foreclosure sale payable proportionately to the bondholders had remained unclaimed by some for fourteen years. It was held by the court that although the money had been paid into court in special trust for the particular purpose of paying each bondholder his share, if it was not claimed by them then it was manifest "upon the face of the record in the case, that it should by redistribution, be paid to the other bondholders, very much the larger part of whose debts were not paid" by the first distribution. In a similar situation, Louisville & N. R. Co. v. Robin, 5 Cir., 135 F.2d 704, the general rule was stated to be that where some members of a class could not be found redistribution to other members would follow.

While in these cases the fund to be distributed was in the hands of the court, and here it is not, the similarity of the position in which the appearing bondholders there and here find themselves leads this court to the conclusion that the view expressed therein is the only one consonant with equitable principles.

■ The action is one for a declaratory judgment. Plaintiff and the defendant bondholders aligned in interest with her represent 95% of the bondholders; this is a more than adequate representation of the beneficiaries of the trust indenture; the remaining 5% of the beneficiaries (representing about 55 bonds) have failed to claim their share for a period of 30 years and all reasonable efforts made to locate them through publication and notice by mail have proved fruitless; the probability of their appearing in the future is remote. Adequate legal notice has been given them and their interests are fairly represented by the guardians appointed. The Trustee is before the court and makes no objection to the proceedings. There is sufficient representation of the bondholders to make the decree of this court binding on the unknown bondholders. T. J. Moss Tie Co. v. Wabash Ry. Co.,

D.C., 11 F.Supp. 277; Colorado & Southern Ry. Co. v. Blair, 214 N.Y. 497, 108 N.E. 840.

■ The power of a court to interpret the terms of a trust agreement in a manner seemingly contrary to express provisions in order to accomplish the general overall purpose and intent of the agreement must be warily and cautiously exercised. It should not so act from a feeling that it would be more advantageous, or wiser or fairer to the beneficiaries, nor should it act to give preferential treatment to some beneficiaries over others. Matter of Roe, 119 N.Y. 509, 23 N.E. 1063. But, it is a cardinal principle that a trust is to be administered so as to secure to its beneficiaries the benefits intended. And where it appears that by reason of an emergency or a change of conditions unforeseen by the settlor the accomplishment of the trust has become impossible and the means unworkable, the court may authorize a trustee to do something which is not expressly permitted or which is forbidden by the trust in order to carry out its general purpose. In re Pulitzer's Estate, 139 Misc. 575, 249 N.Y.S. 87, 93; Trusts and Trustees, Bogert, Vol. 3, Part I, Secs. 561–62; Restatement Law of Trusts, Sec. 167.

The underlying principle was well stated in In re New (1901) 2 Ch. 534:

"* * * The Court may, on an emergency, do something not authorized by the trust. It has no general power to interfere with or disregard the trust; but there are cases where the Court has gone beyond the express provisions of the trust instrument—cases of emergency, cases not foreseen or provided for by the author of the trust, where the circumstances require that something should be done.

* * * * * *

"It is impossible, and no attempt ought to be made, to state or define all the circumstances under which, or the extent to which, the Court

will exercise the jurisdiction. * * * But each case brought before the Court must be considered and dealt with according to its special circumstances." (p. 545)

In T. J. Moss Tie Co. v. Wabash Ry. Co., supra, the court was asked to alter the terms of a trust so as to permit the release of certain property under a corporate mortgage. Although such a release was clearly not within the authority of the trustee, the court directed a departure from the trust instrument upon a finding that it was in the best interests of the beneficiaries.

■ The primary purpose of the 1903 indenture agreement was to guarantee to the bondholders full payment of their bonds by September 1, 1933; this, the Trustee was to endeavor to do by payment pro rata to each bondholder upon presentation of his bond; none of the bondholders who have received their proportionate share under all the distributions have been paid in full; there is a balance which if paid over would work a reduction of the debt due to 95% of the bondholders, but which under the terms of the trust the Trustee may not pay; the holders of the balance of the bonds—all bearer bonds—are unknown. A change of conditions not anticipated and not provided for by the settlor has created a situation where strict compliance with the terms of payment under the agreement will frustrate its purpose with respect to most of the beneficiaries.

I hold that plaintiff and defendant bondholders are entitled to the unclaimed fund in the hands of the Trustee after payment of necessary costs incident to this suit according to their pro rata share.

In this suit the Attorney General of the State of New York was permitted to intervene on behalf of the People of the State of New York. He has not moved for summary judgment but he does oppose plaintiff's motion on the ground that an issue of fact exists, namely, that these funds constitute abandoned property under Sec. 300 of the Abandoned Property Law of New York, Mc.K. Consol.Laws, c. 1. In his answer to the complaint he has cross-claimed against defendant Trustee alleging that at the expiration of fifteen years from the date of the last dividend (1940) these moneys should have been turned over to the State Comptroller as abandoned property, and he prays that the complaint be dismissed and that the Trustee be required to pay over the fund to the State Comptroller.

In view of the conclusions reached I find it unnecessary to further consider the applicability of the New York Abandoned Property Law.

Motion granted; the rights of the parties are declared as above indicated. Settle proposed judgment and applications for allowances on notice to all who have appeared.