Rose MAYER, as Administratrix of Benjamin Mayer, Plaintiff,

v.

CHASE NATIONAL BANK OF The CITY OF NEW YORK as Trustee under a certain agreement made on September 1, 1903 by and between the Western Pacific Railway Company and the Bowling Green Trust Company, et al., Defendants,

Euphemia V. R. Wyatt, as Administratrix of Christopher B. Wyatt, et al., Intervening Defendants

and

People of The State of New York, Intervening Defendant.

United States District Court
S. D. New York.
Aug. 5, 1958.

Robert M. Cowen, New York City, for plaintiff.

Millbank, Tweed, Hope & Hadley, New York City, for defendants.

Abraham J. Gellinoff, New York City, guardian ad litem.

Eugene H. Nickerson, New York City, guardian for absentee-bondholders.

Bernard Cowen, New York City, for intervening defendants Euphemia V. R. Wyatt, as Administratrix etc. et al.

Louis J. Lefkowitz, Atty. Gen. of State of New York, for intervening defendant People of State of New York, Daniel M. Cohen, Asst. Atty. Gen. of the State of New York, of counsel.

DIMOCK, District Judge.

These are motions in a suit by plaintiff and other known holders of Western Pacific Railway mortgage bearer bonds to compel disposition of a fund held by defendant Chase National Bank of the City of New York as Trustee.

The facts are stated in detail in previously reported opinions in the case, at D.C., 136 F.Supp. 83, reversed 2 Cir., 233 F.2d 468; 2 Cir., 242 F.2d 148. The trust is controlled by the terms of a trust agreement, dated September 1, 1903, between the Western Pacific Railway Company and a predecessor of the Trustee. The fund in issue represents unclaimed amounts due to bondholders as a result of a judgment obtained by the Trustee against the guarantor of the bond issue, Denver & Rio Grande Railway. The Trustee made available seven distributions commencing in September 1918 and terminating June 30, 1925. Many bondholders, however, did not claim their share of the distributions when they were made. The practice of the Trustee since the time of the regular distributions has been to pay, on presentation of each 1000 bond, 1/50,000 of each distribution in which the bond had not previously shared. (The issue consisted of $50,000,000 in aggregate principal amount.) Plaintiff seeks to amend the trust agreement so that the unclaimed amount of $21,649.65 remaining in the fund can be apportioned among the known bondholders. The unknown bondholders who have been joined as party defendants are represented by guardians ad litem who have been appointed by the court. The State of New York, an intervening defendant, has cross-claimed against the Trustee under section 303 of the Abandoned Property Law of New York to recover the fund as abandoned property within the definition of section 300 of that law.

The Court of Appeals, 233 F.2d 468, set aside summary judgment granted to

plaintiff and other known bondholders. The court held that, under the law of New York, the interests of bondholders were several and that the fund could not be turned over to known bondholders. The case was remanded with specific instructions to consider the state's cross-claim and to determine what further efforts should be made to locate the missing bondholders.

On remand the District Court entered judgment dismissing the complaint and the claims of other known bondholders. The Court of Appeals, on a second appeal, vacated the dismissal and held that its previous opinion "did not intend to preclude the claimants from proceeding upon some new theory based upon new facts". 242 F.2d 148, 149.

In accordance with the second remand, plaintiff filed an amended complaint. She then moved for appointment of a special master to locate unknown bondholders and for dismissal of the cross-claim of the State of New York. The State of New York cross-moved to dismiss the amended complaint and subsequently moved for summary judgment on its cross-claim. The guardians ad litem of the unknown bondholders join in the state's motions. The Trustee takes a neutral position on the motions directed to the amended complaint but contends that the claim alleged therein should be disposed of before the funds are transferred to the State Comptroller. Since all parties have had opportunity to submit and have submitted affidavits, the motions to dismiss will be treated as motions for summary judgment. Rule 12 (b), F.R.Civ.P.

I shall first take up the motions directed to the amended complaint. Plaintiff and the known bondholders state that twenty bonds were, at the time of the first distribution and for some 22 months before, sequestered by the Imperial German Government and that an additional fifteen bonds should be assumed to have been so sequestered. Plaintiff claims that "[u]nder the law, as plaintiff understands it, such appropriation by an alien enemy terminated the obligation of the American corporation to recognize the sequestered * * * bonds as valid and outstanding". Therefore, she argues, the original seven distributions should have been in the ratio of 1/49965 rather than 1/50,000.

■ Plaintiff does not, however, cite to any law that substantiates this contention and I can find no basis for such a holding. Section 7(c) of the Trading with the Enemy Act, as amended November 4, 1918, 40 Stat. 1020, provided that:

"If the President shall so require any money * * * owing * * to * * * an enemy * * * shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian".

Debts owing to enemy aliens were not automatically cancelled but were payable to the Alien Property Custodian. See American Exchange Nat. Bank v. Garvan, 2 Cir., 273 F. 43, 47, affirmed sub nom Simon v. American Exchange National Bank, 260 U.S. 706, 43 S.Ct. 165, 67 L.Ed. 474.[1] The Act does not provide for termination of the corporation's obligations.

■ Plaintiff contends also that some bondholders were unwilling to go to the expense of collecting their share, that this should be interpreted as an express renunciation of their claims and that the court should amend the trust so that the sum of the renounced claims would fall into a residuary estate which could then be distributed to the known holders. I cannot distinguish these allegations from those in the original complaint which was dismissed by the Court of Appeals.[2]

The amended complaint is dismissed.

1. Corporations were also required to issue and deliver new stock certificates to the Alien Property Custodian in place of those owned by enemy aliens which were required to be cancelled. See In re Sutherland, 2 Cir., 23 F.2d 595.

2. Paragraph 28 of the original complaint makes substantially the same allegations.

The instruction of the Court of Appeals on the first remand, 233 F.2d 468, 471, to "determine what further efforts should be made to locate the missing bondholders" was apparently based upon the contention of the guardians ad litem that such a search be made. The guardians have now determined that it would be too burdensome an expense upon the fund to make such a search and they have abandoned the contention argued to the Court of Appeals that further efforts be made. The guardians now contend that the interests of the unknown bondholders would be best served by transfer of the fund to the State Comptroller in which case unclaimed distributions could be claimed under section 1406 of the Abandoned Property Law. Efforts were made to locate such bondholders earlier in the proceedings by publication and notice by mail sent to holders who received one or more distributions. I agree with the conclusions of the guardians that further efforts would be too costly and wasteful. Plaintiff and the known bondholders no longer have any interest in the fund so that I need not consider their motion to appoint a special master to locate the unknown bondholders.

█ I now pass to the cross-claim of the State of New York against the Trustee. The State's motion to intervene was granted by order of Judge Sugarman, dated May 20, 1955. Judge Ryan did not pass upon the state's cross-claim because it was mooted by the granting of summary judgment for plaintiff, 136 F.Supp. 83. The question of the court's jurisdiction to consider the cross-claim was raised by plaintiff on appeal and the Court of Appeals left the matter open for the District Court on its remand. The guardians contend that the court has jurisdiction; the Trustee merely calls the issue to the court's attention without taking a position. Even though jurisdiction is uncontested, however, it is the duty of the court to raise the issue. United Lens Corporation v. Doray Lamp Co., 7 Cir., 93 F.2d 969, 974.

█ Jurisdiction in this case was based upon diversity of citizenship between plaintiff and defendant Trustee. There is no diversity, however, between the citizenship of the Trustee and the State of New York. Whether or not an independent ground of jurisdiction is required to permit the court to consider the cross-claim depends upon whether or not it is so related to the main claim as to be considered ancillary to it. Moore v. New York Cotton Exchange, 270 U.S. 593, 609–610, 46 S.Ct. 367, 70 L.Ed. 750.

██ A compulsory counterclaim is considered ancillary to the main claim and may be asserted without an independent jurisdictional basis. United Artists Corp. v. Masterpiece Productions, 2 Cir., 221 F.2d 213. Rule 13(a), F.R. Civ.P. defines a compulsory counterclaim as one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 13(g), which provides for a cross-claim against a co-party, is cast in language similar to Rule 13(a). It provides:

> "A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action."

A cross-claim maintainable under this rule may also be considered ancillary to the main claim and need not have the characteristics necessary to qualify for independent consideration by the federal court. Coastal Air Lines v. Dockery, 8 Cir., 180 F.2d 874, 877; see 3 Moore's Federal Practice, 2d ed., par. 13.36, pp. 97–98.

Chief Judge Clark stated, in reference to the criterion of Rule 13(a), that "[i]n practice this criterion has been broadly interpreted to require not an absolute identity of factual backgrounds for the two claims, but only a logical relationship between them." United Artists Corp. v. Masterpiece Productions, supra, 221 F.2d at page 216. The subject matter of the cross-claim in this case, which is the dis-

position of an unclaimed fund under the Abandoned Property Law of New York, bears a logical relationship to the subject matter of the original action, which is the disposition of the unclaimed fund under the terms of the trust agreement. As in Moore v. New York Cotton Exchange, supra, 270 U.S. at page 610, 46 S.Ct. at page 371, the failure of the claim in the original action that resulted from the fact that there was no provision for disposition of the fund in the trust agreement and no basis for amendment establishes a foundation for the cross-claim.

I hold, therefore, that the cross-claim is within the terms of Rule 13(g) and is ancillary to the claim in the original action so that the court has jurisdiction over it. Following the analogy to Moore v. New York Cotton Exchange, supra, the failure of the claim in the original action does not oust jurisdiction over the pendent cross-claim. See 3 Moore's Federal Practice, supra.

There is some authority for the proposition that the court has discretion to dismiss a pendent cross-claim for lack of jurisdiction where the main claim has been dismissed. See State of Maryland, to Use and Benefit of Wood v. Robinson, D.C.D.Md., 74 F.Supp. 279, 282. In this case, however, I believe that I should exercise that discretion to retain jurisdiction. The fund will be substantially reduced as a result of expenses and allowances incurred in the present litigation. Bondholders have been presenting claims from time to time. In the interest of preservation of the fund for any bondholders that may appear in the future, it is desirable that all controversies as to the disposition of the fund be settled in this proceeding.

Section 303 of the Abandoned Property Law permits recovery of "abandoned property". That is defined in section 300 the pertinent parts of which follow:

"The following unclaimed property held or owing by banking organizations shall be deemed abandoned property:

"(a) Any amounts due on deposits * * * held or owing by a banking organization, which shall have remained unclaimed for fifteen years by the person or persons appearing to be entitled thereto, including any interest or dividends credited thereon, excepting

* * * * * *

"(v) any amount held or owing by the banking organization * * as trustee of an express trust * * for the purpose of making payment to holders of * * * bonds * * * of a corporation * * * other than a corporation * * * which shall have discontinued the conduct of its business, or the corporate existence of which shall have terminated, without the right to receive such amount having passed to a successor or successors."

The guardians ad litem do not oppose the State's claim. The plaintiff and other known bondholders have no standing to oppose it because, as I have held, they have no interest in the fund. The controversy, if any, is thus between the State and the Trustee.

In light of the holding of the Court of Appeals that the interests of the unknown bondholders are several, it is clear that there has been no claim made to these interests for more than fifteen years.

The effect of the above quoted portions of the statute is that any amounts due on deposits unclaimed for more than fifteen years are "abandoned property" *excepting* any amount held in trust to make payment to holders of bonds of a corporation *other than* a corporation which shall have discontinued its business without the right to receive such amounts having passed to a successor. The State is thus entitled to an amount deposited unless the Trustee sustains the burden of proof that it was held in trust to pay the holders of bonds of a corporation other than one which has discontinued its business without the right to receive such amount having passed to a successor.

One of these conditions to the State's right clearly exists here since Western Pacific Railway Company has discontinued business. The Trustee has made no attempt to sustain its burden to prove that the right to receive the amount in question did pass to a successor. The fund is abandoned property within the terms of the statute and must be paid and delivered to the State Comptroller. Section 303, supra.

The motions of the State of New York for summary judgment dismissing the complaint and directing payment of the fund to the State Comptroller are granted. So ordered.

The motions of plaintiff to dismiss the cross-claim of the State of New York and to appoint a special master are denied. So ordered.

Jurisdiction is reserved for applications for fees and allowances.

Settle judgment on notice.