FRANCES ROBB, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY, a Corporation.—No. 38673.—174 S. W. (2d) 832.

Division One, November 1, 1943.

*A. Lowell Morris* and *John P. Griffin* for appellant.

*Fordyce, White, Mayne, Williams & Hartman* and *R. E. LaDriere* for respondent; *Harry Cole Bates* of counsel.

1040

CLARK, J.—This case was heard and determined by the St. Louis Court of Appeals [170 S. W. (2d) 101] and transferred here because of the dissent of one of the judges of that court. We deter-

mine the case as though the appeal had properly come here in the first instance. [Mo. Const., Art. 6, Amendment of 1884, sec. 6.]

The suit is to recover five monthly payments aggregating $500.00, less a loan of $328.00, claimed to be due on a policy of insurance issued by respondent [defendant] on the life of Omar G. Robb with appellant [plaintiff] as beneficiary. On a trial by the court without a jury, on an agreed statement of facts, judgment was for defendant and plaintiff appealed.

The policy was dated December 9, 1931, and delivered to insured on January 9, 1932, at which time the first semiannual premium was paid. By the policy respondent promised to pay to insured, if living on December 9, 1968, or to the beneficiary upon due proof of prior death of the insured, the sum of $100.00, and thereafter the monthly sum of $100.00 until the total sum of $6,000.00 should be paid. On the face of the policy it was stated: ''The commuted value of all the above payments is $5,557.00, herein called the amount of insurance''. The policy provided for an annual premium of $215.67, but before it was delivered, at request of insured, the premiums were changed to a semiannual basis of $112.20. A table in the policy shows a cash or loan value at the end of the third year of $59.00 for each $1,000.00 of the amount of insurance. It was provided that upon default in the payment of any premium the policy would not be extended beyond a period of thirty-one days, but insured would [833] have the options of taking (a) the cash surrender value, (b) paid up participating endowment insurance, (c) paid up nonparticipating term insurance. If none of the options were exercised within three months after default, the insurance would automatically be extended under option (c) for such period as the cash surrender value, less any indebtedness, would purchase. Provision was made for policy loans and when such a loan with interest should equal the cash surrender value and insured failed to pay the interest due, the policy would become void, after one month's notice mailed to insured.

It was stipulated in the agreed statement that the premium due on December 9, 1934, (as claimed by respondent) or on January 9, 1935, (as claimed by appellant) was never paid and the policy thereby lapsed; that at the date of lapse there was a loan on the policy for $328.00; that insured died on September 13, 1935; that the application for the policy stated that the company would incur no liability until the policy was delivered, accepted, and the first premium paid.

Appellant makes the point, citing many cases, that the policy although dated December 9th did not become effective until its delivery on January 9th; that there was no default in the payment of premium until January 9, 1935; that respondent breached its contract by demanding payment of a premium on December 9, 1934, and lapsing the policy thirty-one days thereafter; and that this

breach by respondent relieved insured of paying or tendering the premium to keep the policy in force.

The trouble with this contention is that there is nothing in the record to show that respondent demanded payment of a premium on December 9th, or lapsed the policy thirty-one days thereafter. Respondent took no positive 'action to lapse the policy and none was necessary under its terms. The agreed statement of facts expressly states that the policy lapsed for nonpayment of premium and it is immaterial whether the lapse took place thirty-one days after December 9th or thirty-one days after January 9th.

█ The appellant seems to hold the theory that the provision lapsing the policy for default in the payment of premiums must be construed in connection with another provision authorizing the respondent to cancel the policy for default in the payment of interest, on one month's notice, when a policy loan equals the cash surrender value; and, therefore, that the policy in the instant case did not lapse because no notice was given under the loan provision. That theory is directly contrary to the holding in the well considered opinion of the St. Louis Court of Appeals in Rick v. Ins. Co., 230 Mo. App. 1084, 93 S. W. (2d) 1126. The two provisions are separate and distinct, not inconsistent, and both should be given effect. Under the policy, upon default in the payment of the premium and the expiration of the ensuing period of grace, the policy lapsed without any notice to the insured, and that was true regardless of whether or not there was an existing policy loan. Upon lapse for nonpayment of premium, if the policy then had any surrender value, the insured was entitled to select one of the three options above noted and, as he failed to make such selection within the time required, the policy would be extended as nonparticipating term insurance for such time as the surrender value, if any, would purchase. It is agreed that the policy loan amounted to $328.00 at the date the policy lapsed. Respondent contends that the surrender value was also $328.00 at the date of the lapse, and, therefore, after deducting the loan nothing was left for the purchase of extended insurance. This contention is based on the assumption that the face amount of insurance is $5,557.00. The table of guaranteed values showing $59.00 per one thousand as the surrender value at the date of lapse. However, appellant claims that the face amount of insurance is $6,000.00 and the surrender value $354.00, leaving $26.00, after deducting the loan, to purchase extended insurance. Even if appellant is correct in claiming that the amount of insurance was $6,000.00, which we need not decide, the sum of $26.00 would have purchased extended insurance for not more than four months according to the table of values contained in the policy, and appellant makes no claim that this table is less favorable to the insured than the statutory method of calculating extended insurance. Indeed, appellant does not claim

that $26.00 would have purchased extended insurance to the death of insured. As we understand it, appellant claims that the surrender value exceeded the loan indebtedness and accordingly respondent had no right to cancel the policy under the loan provision. As we have already pointed out, [834] this contention of appellant is based on a false premise, for the policy was not canceled under the loan provision; it lapsed for nonpayment of premium.

Finally, appellant makes the following contention:

"It is agreed that the annual premium of the policy was $215.67, and the insured elected to pay the premium semiannually and the defendant charged him $112.20, which would include interest in the sum of $8.73. In other words, the insured paid the semiannual premium claimed by the defendant to be due on December 9th of each year, leaving $107.83 due to be paid at the end of six months, and the interest on this sum at the legal rate of 6 per cent per annum would be $3.23, and the defendant charged him at the rate of 16.4 per cent or $8.73, and, therefore, this over-charge of interest is void, and the plaintiff is entitled to credit on the loan for said amount".

Appellant further says that by charging usurious interest the lien of respondent on the cash surrender value became void and left the entire reserve to be applied to the purchase of extended insurance.

Appellant does not charge that the policy loan which respondent made to insured was tainted with usury. Indeed, the record fails to show what rate of interest was charged on the policy loan. Appellant's claim of usury relates only to the amount of premiums charged. No case has been cited and we have been unable to find one wherein it is held that an excessive charge for insurance premiums constitutes usury. Appellant cites two Kentucky cases, Emig v. Mut. Life Ins. Co., 106 S. W. 1. c. 233, and N. Y. Life Ins. Co. v. Curry, 72 S. W. 1. c. 738, which hold that, as to policy loans, insurance companies must be treated in the same manner as other money lenders so far as questions of usury are concerned. That holding is sound, but is without application here. Appellant cites the case of Continental Casualty Co. v. Monarch Transfer Co. (Mo. App.), 23 S. W. (2d) 209, holding that acceptance of a policy, indemnifying insured for loss or liability from the acts of his employees for one year, obligated the insured to pay the premium. That holding was based on an entirely different contract from the one now being considered. The policy in this case constituted a contract whereby, in consideration of a down payment and on condition of the payment of specified sums for a certain number of years or until the prior death of the insured, the respondent agreed to pay to insured or to his beneficiary a certain sum of money in monthly installments. It was not a contract of insurance for one year with privilege of renewal from year to year by paying premiums, but a continuous, indivisible contract. [29 Am. Juris., p. 205, sec. 189; Insurance, 14 R. C. L., p. 957, sec. 129.]

To create usury there must be a loan, express or implied. [Quinn v. Van Raalte, 276 Mo. 71, l. c. 104, 205 S. W. 59.] The issuance of a life insurance policy is not a sale, although it is often so called, but neither is it a loan to the insured of one or all the premiums which may thereafter become due, whether annually or otherwise. When this policy was issued and a semiannual premium collected, it could not have been known how long insured would live or whether any future premium would ever become due. Payment of premiums was necessary to keep the insurance in force, but the future premiums did not constitute debts. The insured entered into no agreement to pay them and he had the right to discontinue payment at any time without incurring personal liability. [Insurance, 29 Am. Juris., p. 327, sec. 377.]

We know of no reason to prevent an insurance company, so long as it does not run afoul of a valid regulation or statute as to rates, from making a greater difference than the permissible rate of interest between semiannual and annual premiums. Such charges do not constitute usury.

The judgment is affirmed. All concur.