**GREAT HORIZONS DEVELOPMENT CORPORATION, Plaintiff,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant.**

**Civ. No. H 76–196.**

United States District Court,
N. D. Indiana,
Hammond Division.

June 7, 1978.

---

Clyde D. Compton, Edward J. Hussey, Hodges, Davis, Gruenberg, Compton & Sayers, Gary, Ind., for plaintiff.

Peter C. Bomberger, Friedrich, Bomberger, Tweedle & Blackmun, Highland, Ind., for defendant.

## MEMORANDUM DECISION

McNAGNY, District Judge.

This matter is presently before the Court on cross-motions for summary judgment. The instant diversity action alleging breach of an insurance contract, was filed by the plaintiff, Great Horizons Development Corporation (hereinafter Great Horizons) on July 19, 1976, against the defendant, Massachusetts Mutual Life Insurance Company (hereinafter Massachusetts Life). Great Horizons seeks to recover $250,000.00 in life insurance proceeds on a policy insuring the life of its late President, Paul E. Schleicher, Jr. In addition to its claim for recovery under the policy, the plaintiff charges Mas-

sachusetts Life with malicious, unjustified and oppressive conduct giving rise to a claim for punitive damages in the amount of $750,000.00. On August 11, 1976, Massachusetts Life filed its answer denying any liability under the insurance contract or in punitive damages. In June, 1977, the defendant filed a counterclaim seeking the return of a $1,555.00 dividend payment mistakenly mailed to Great Horizons on May 28, 1975.

On June 21, 1977, the defendant, Massachusetts Life, filed its motion for summary judgment with supporting memorandum. On October 31, 1977, Great Horizons filed its response to the motion of the defendant, and on December 5, 1977, filed its own motion seeking summary judgment. The Court heard oral argument on the cross-motions on December 13, 1977, and permitted each party to thereafter file a supplemental memorandum in support of their respective positions.

The Court has carefully considered the pleadings, depositions of witnesses, answers to interrogatories, together with affidavits in support of the motions, and concludes that there is no genuine issue as to any material fact. For the reasons which the Court will set forth below, the motion for summary judgment of the defendant, Massachusetts Life, is GRANTED, and the cross-motion of the plaintiff, Great Horizons, is DENIED. Additionally, the Court *sua sponte* DISMISSES the counterclaim of Massachusetts Life due to a lack of subject matter jurisdiction.

## I.  FACTS

From the pleadings, depositions, answers to interrogatories, and affidavits filed in this cause, the Court is able to separate those facts which are undisputed and which are material to the determination of the cross-motions for summary judgment.

On May 28, 1969, the defendant, Massachusetts Life, issued a $250,000.00 life insurance policy (Policy # 4–465–594) to Mid-American Homes, Inc., an Indiana corporation. The policy insured the life of one Paul E. Schleicher, Jr., the President of Mid-American Homes. A provision of the policy permitted a change in ownership of the policy during the lifetime of the insured. Utilizing this provision, ownership of the policy was first transferred to Eastgate Homes in 1972 and finally to the plaintiff, Great Horizons, in 1973. With this transfer, Great Horizons also became the beneficiary of the policy. The validity of these transfers in ownership is not contested.

The original insurance application was made by Paul E. Schleicher, Jr. in March of 1969. Following the application, the insured was examined by a local medical doctor approved or appointed for that purpose by Massachusetts Life. As a result of the applicant's medical history, Massachusetts Life offered to insure his life, but subject to premiums higher than the standard rate. Policies subject to these higher premiums are referred to as "rated" or "classified premium group" policies. In addition to being a "rated" policy, the contract designated the policy as a "Modified 3 Life Policy." This designation permitted lower premiums for the first three years of the policy.[1]

During the first year of the policy, the premiums were paid monthly by pre-authorized automatic checks from the policy owner's bank account. At the first anniversary of the policy, the owner elected to switch to an annual premium. The premiums were paid on an annual basis for the next four (4) years. These annual premiums were paid partly by check and partly by policy loans. These loans were arranged before the expiration of the grace period and are evidenced by loan certificates. The loans during these years were not pursuant to the automatic premium loan provision of the policy. The balance between the amount of the loan and the premium due was paid by check.

---

1. Annual premiums during the first three years of a Modified 3 Life Policy are approximately 80% of later premiums.

By May 28, 1974, the fifth anniversary of the policy, Great Horizons was the owner, and elected to return to a monthly premium schedule. This change to a monthly premium schedule was necessitated by serious cash flow difficulties at Great Horizons. During the sixth year of the policy, certain of the monthly premiums were paid by check and others by operation of the automatic premium loan provision of the policy. The February 28, 1975, premium was paid entirely by automatic premium loan. When the next premium came due on March 28, 1975, the security remaining in the policy was insufficient to permit an automatic premium loan to cover the entire premium. Great Horizons arranged with the defendant to pay the balance between the maximum automatic premium loan and the premium amount due by a separate check. After the March 28, 1975, premium was paid, the total indebtedness on the policy including interest due or accrued, equaled the then value of the policy. Massachusetts Life did not notify Great Horizons that it would terminate the policy due to total indebtedness equalling or exceeding the value of the policy. The April 25, 1975, premium was never paid, and at the expiration of the 31 day grace period there was no security in the policy to engage the automatic premium loan provision. No further premiums were paid on Policy No. 4–465–594.

On or about May 28, 1975, Massachusetts Life mailed a check to Great Horizons in the amount of $1,555.00. The check represented a dividend payable to owners of policies in force on their anniversary date. Subsequently, Massachusetts Life demanded return of the dividend, which demand Great Horizons refused.

It was the practice of Massachusetts Life to send policy owners a notice of premium payments due before the actual date a premium payment was required. The plaintiff concedes receipt of these notices, at least as they relate to the premiums relative to this action.

In the absence of a specific request, the defendant did not notify Great Horizons of the loan value available for utilization under the automatic premium loan provision of the policy. However, there is evidence in the record that the comptroller of Great Horizons determined and verified the cash values of all company owned life insurance policies at least annually for audit purposes.

Paul E. Schleicher, Jr., the insured, died on October 7, 1975. Thereafter, Great Horizons submitted to the defendant proof of the death of the insured and its claim for benefits. After repeated demands for payment of the policy proceeds were refused by Massachusetts Life, the plaintiff commenced this action.

## II. Policy and Statutory Provisions

The life insurance policy issued on May 28, 1969, was drafted by Massachusetts Life and contained the usual litany of conditions, outlining the rights and duties of the parties to the contract, most of which are not relevant to the instant cause of action. Certain provisions of the policy, however, are crucial to a determination of this case.

A provision entitled PREMIUMS [2] stipulates that the premiums may be paid annu-

---

2. PREMIUMS Premiums are payable in advance during the lifetime of the insured and are payable at intervals of twelve months (annually), six months (semiannually), three months (quarterly), or one month (regular monthly), at the Company's rates effective when this policy was issued. The first premium is due on the Policy Date and each subsequent premium is due at the end of the interval covered by the immediately preceding premium and on the same day of the month as the Policy Date. The frequency of premium payment shall be as shown in the application. On the due date of any premium the owner may change the frequency of premium payment to any aforesaid interval, except that no change shall be made which will result in the payment of a premium of less than $10.00 without the consent of the Company. All premiums after the first are payable on their due dates at the Home Office or to an agent or cashier in exchange for the Company's official receipt signed by the Secretary or an Assistant Secretary.

A default in premium payment will occur upon non-payment of any premium on its due date. If any premium in default is not paid by the end of the grace period, this policy shall lapse and terminate as of the due date of the premium in default and shall have no value

ally, semi-annually, quarterly or monthly. The premium section of the policy also indicates that failure to pay a premium by the end of the grace period will lapse the policy. The policy provides for a 31 day grace period.[3] In event of a policy lapse for failure to timely pay premiums, the contract provides a reinstatement clause[4] permitting the owner the right to reinstate the policy within 31 days after expiration of the grace period without evidence of insurability. Thereafter, the policy allows reinstatement within five (5) years of the due date of the premium, but only upon satisfactory evidence of insurability.

Other policy provisions which are crucial in a determination of this case relate to loan privileges guaranteed to the policy owner. In general, policy loans[5] may be obtained after the first anniversary of the policy, provided there is sufficient security and a proper assignment of the policy. Sufficient security[6] denotes that the value of the policy plus the value of any paid up additions and dividend accumulations exceeds the amount of a loan together with all existing indebtedness and interest due or accrued to the due date of the next premium.

In addition to regular loans, the policy in question provides for automatic premium loans[7] in the event the owner fails to pay a premium by the last day of the grace period, and there is sufficient value in the policy to secure a loan for the premium

except as provided under Guaranteed Cash Value and Nonforfeiture Benefits.

With the consent of the Company, premiums may be payable under an alternative monthly payment plan. The monthly premium under such plan shall be at a special rate fixed by the Company. If the monthly premium shown on the Schedule Page is followed by "A", such premium is at such rate. If premiums cease to be payable under such plan, premiums shall be payable monthly thereafter at the regular monthly rate.

The premiums under the title Premiums (As of Policy Date) shown on the Schedule Page include the premiums for any attached agreements.

3. GRACE PERIOD A grace period of thirty-one days is granted for the payment of any premium after the first, during which period this policy will continue in full force.

4. REINSTATEMENT If this policy has lapsed (see Premiums provision) and has not been surrendered for its cash surrender value, it may be reinstated during the lifetime of the insured as follows:

(a) Reinstatement may be effected within thirty-one days after the expiration of the grace period for the premium in default without evidence of insurability.

(b) Reinstatement may be effected after the period specified in (a) but within five years from the due date of the premium in default only upon production of evidence of insurability satisfactory to the Company.

5. POLICY LOANS A loan may be obtained from the Company at any time after the first policy year for an amount not exceeding the maximum amount for which this policy is sufficient security on the proper assignment of this policy and on its sole security. If a premium is due and unpaid and its payment is necessary to establish sufficient security for the loan, such premium shall be paid from the amount of the loan. Loans may not be made while this policy is in force as extended term insurance. The Company may defer for a period of six months the granting of any loan other than a loan to pay premiums on policies in the Company.

6. SUFFICIENT SECURITY FOR LOANS The maximum amount of loan for which this policy is sufficient security is that amount which, together with all existing indebtedness and with interest due or accrued to the due date of the next premium or to the next anniversary if no further premiums are payable, does not exceed the value of this policy plus the value of any paid-up additions and any dividend accumulations on such due date or such next anniversary.

7. AUTOMATIC PREMIUM LOANS If this provision is operative and if a premium due after the first policy year remains unpaid on the last day of the grace period, the Company will automatically loan an amount sufficient to pay such premium provided there is sufficient security under this policy. If this policy is not sufficient security for such a loan, the Company will automatically loan an amount sufficient to pay the next smaller premium for which there is sufficient security under this policy and premiums thereafter will be payable at such frequency.

This provision will be operative if it has been elected either in the application for this policy or by written request received at the Home Office before the expiration of the grace period. An election may be revoked at any time but only with respect to premiums falling due after the date written notice of revocation is received at the Home Office.

amount. The policy also contains a clause detailing general provisions relating to loans.[8] In addition to establishing the interest rate chargeable on policy loans, this clause requires that prior to terminating the policy because total indebtedness equals or exceeds the then value of the policy, Massachusetts Life must give the owner at least a thirty-one (31) day notice.

■ Inasmuch as the statutes in effect at the time a life insurance policy is issued are as much a part of the policy as if they had been incorporated within its terms, *Sun Life Assurance Co. of Canada v. Darnell*, 107 Ind.App. 204, 20 N.E.2d 680 (1939), certain Indiana statutes are relevant to a determination of the issues in this case. Ind. Code § 27-1-12-7 (1971) details the standard nonforfeiture provisions required of life insurance policies issued after January 1, 1948. That statute was in effect when the instant policy was issued and provides in pertinent part as follows:

§ 27-1-12-7 [39-4206b]. *Standard nonforfeiture provisions of life policies issued on or after a date not later than January 1, 1948.*—(a) No policy of life insurance, except as stated in subsection (f) of this section, bearing a date of issue which is the same as or later than a transition date to be selected by the company pursuant to section 12 [27-1-12-12] of this chapter, such transition date in no event to be later than January 1, 1948, shall be delivered or issued for delivery in this state, or issued by a company organized under the laws of this state, unless it shall contain in substance the following provisions, or corresponding provisions which in the opinion of the department

are at least as favorable to defaulting or surrendering policyholders:

(1) That, in the event of default in any premium payment after premiums have been paid for at least one [1] full year in the case of ordinary insurance or three [3] full years in the case of industrial insurance, the company will grant, upon proper request made not later than sixty [60] days after the due date of the premium in default, a paid-up nonforfeiture benefit on a plan stipulated in the policy, effective as of such due date, of a stated value determined as specified in this section;

(2) That, upon surrender of the policy within sixty [60] days after the due date of any premium in default, after premiums have been paid for at least three [3] full years in the case of ordinary insurance or five [5] full years in the case of industrial insurance, the company will pay, in lieu of any paid-up nonforfeiture benefit, a cash surrender value of a stated amount determined as specified in this section;

(3) That, if a request for a nonforfeiture benefit or surrender of the policy is not made or effected as contemplated in (1) and (2) above, a designated paid-up nonforfeiture benefit shall become operative as specified in the policy;

Ind. Code § 27-1-12-8 (1971) details certain provisions which by law are not permitted in insurance policies issued or delivered in Indiana. This statute was also in effect when the instant policy was issued. A paragraph of that statute relates to forfeiture of a policy for failure to repay any policy loan or interest thereon:

---

**8.** GENERAL PROVISIONS APPLICABLE TO LOANS Interest on any loan will be at the rate of 5% per annum and will be due and payable annually, not in advance. Interest will accrue from day to day and will become part of the indebtedness as it accrues. If interest is not paid when due, it will be added to the existing loan and will bear interest at the same rate.

If and when the total indebtedness, including interest due or accrued, equals or exceeds the then value of this policy plus the value of any paid-up additions and any dividend accumulations and if at least thirty-one days prior notice

shall have been mailed by the Company to the last known address of the owner and of the assignee of record, if any, this policy shall terminate and become void.

Any indebtedness may be repaid at any time before maturity of the policy by death or as an endowment or before the expiration of the grace period for the payment of any premium in default.

The consent of any irrevocable beneficiary is not required to obtain a loan to pay any premium under this policy, or to elect the Automatic Premium Loans provision, or to revoke such election.

§ 27–1–12–8 [39–4207]. *Prohibited provisions for life policies.*—No policy of life insurance shall hereafter be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, if it contain any of the following provisions:

\*   \*   \*   \*   \*   \*

(4) For the forfeiture of the policy for failure to repay any loan on the policy, or to pay interest on such loan while the total indebtedness on the policy is less than the loan value thereof; or any provision for forfeiture for failure to repay any such loan or to pay interest thereon, unless such provision contain a stipulation that no such forfeiture shall occur until at least thirty [30] days after notice shall have been mailed by the company to the last known address of the insured and to the assignee, if any, if such assignee has notified the company of his address.

While numerous other Indiana statutes define and regulate the relationship between insurers and those insured, only the above statutes have been submitted to this Court as relevant to the issues in dispute.

### III. Discussion

As the Court's summary of facts indicates, Great Horizons admits that the monthly premium on Policy No. 4–465–594, due on April 28, 1975, was never paid. Despite this fact, the plaintiff argues that the terms of the policy and Indiana law prohibit Massachusetts Life from treating the policy as having lapsed for failure to pay premiums. Three arguments are put forth in support of this conclusion.

The plaintiff first argues that despite the provision of the policy relating to lapse for failure to timely pay premiums, that section of the contract must give way to a prior notice requirement dictated by both the policy and state law. Great Horizons points out, and the defendant admits, that as of April 28, 1975, the total indebtedness, including interest due or accrued, equaled the then value of the policy. The plaintiff argues that notice is required by Ind. Code § 27–1–12–8 and the general policy provi-

sion applicable to loans before the defendant can forfeit a policy in which indebtedness equals value. Since no notice was given, Great Horizons contends the policy cannot have been forfeited. The plaintiff maintains that the defendant had no choice but to utilize this provision so long as indebtedness equaled value.

The plaintiff's second argument is one of contract construction and is closely related to the first. Here the plaintiff argues that even if the contract could also be read to allow a lapse for non-payment of premiums, such a reading is inconsistent with Indiana law. Great Horizons insists that any such reading of the contract would be ambiguous at best, and ambiguous insurance contracts must be read in the light most favorable to the insured, particularly where the contract was drafted by the insurer. *Stroehmann v. Mutual Life Ins. Co.*, 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732 (1937); *State Sec. Life Ins. Co. v. Kintner*, 243 Ind. 331, 185 N.E.2d 527 (1962).

The third prong of the plaintiff's argument is that Massachusetts Life failed to notify Great Horizons that the policy had no additional value which would secure automatic premium loans. Such notification, the plaintiff maintains, is required where the information is exclusively within the control and knowledge of the insurer. Additionally, Great Horizons contends that the premium check it received on or about May 28, 1975, led it, to its detriment, to believe the policy had a positive loan value.

Massachusetts Life denies that the insurance contract is ambiguous, and maintains that as of the termination of the grace period following the premium due April 28, 1975, the contract automatically lapsed for failure to pay premiums. The defendant does not deny that as of April 28, 1975, the total indebtedness on the policy equaled the then value, but maintains that termination for that reason is not required, but is at the option of the insurer.

A. Great Horizons relies upon Indiana statutes, provisions in the insurance policy and Indiana case law to support its argu-

ment that the instant policy did not automatically lapse for failure to timely pay premiums. The Court has carefully reviewed each authority cited by the plaintiff and finds them unsupportive of its position.

Great Horizons maintains that Ind. Code §§ 27–1–12–7 and 27–1–12–8 [9] when read together require at least a thirty (30) day notice before the insurance policy in question can be terminated and prohibit termination as attempted by Massachusetts Life. The plaintiff concedes that since the policy had no positive value on April 28, 1975, non-forfeiture benefits were not available, and Ind. Code § 27–1–12–7 was inapplicable. Nevertheless, Great Horizons argues that since § 27–1–12–7 does not apply, § 27–1–12–8 becomes applicable with its requirement of a thirty (30) day notice prior to forfeiting a policy for failure to repay a loan or loan interest, when the total indebtedness equals or exceeds the loan value of the policy.

■ Ind. Code § 27–1–12–8 is applicable to all life insurance policies issued or delivered in Indiana, regardless of the applicability of Ind. Code § 27–1–12–7, the non-forfeiture benefit statute. Though § 27–1–12–8 covers the policy in question, a clear reading of the statute belies the interpretation urged by the plaintiff. The statute requires a thirty (30) day notice before " . . . forfeiture of a policy for *failure to repay* [a] loan . . . *or to pay interest* thereon . . ." when the total indebtedness equals or exceeds the loan value. (Emphasis added). When total indebtedness is less than the loan value, that section absolutely prohibits forfeiture. Ind. Code § 27–1–12–8, ¶ 4. The statute does not prohibit forfeiture or termination of a policy for failure to pay the required premiums. Neither can § 27–1–12–8 be read to require an insurer to seek forfeiture for failure to repay a loan whenever indebtedness equals or exceeds the loan value of a policy. It simply requires notice if forfeiture is sought for that particular reason.

The plaintiff strongly maintains that due to the language in the policy itself, Massa-

chusetts Life had no choice in the manner in which the policy terminated. Great Horizons contends that if there is value in the policy, an automatic premium loan is mandatory when a premium remains unpaid at the end of the grace period. Conversely, if there is no value remaining in the policy, the plaintiff maintains that the word "shall" in the general loan provisions of the policy compels the insurer to give a thirty-one (31) day notice prior to terminating the policy. The Court regards such an interpretation of the policy as unreasonable and contrary to interpretation given similar provisions in cases decided in numerous other jurisdictions.

■ The emphasis which the plaintiff places on the word "shall" in the general policy provisions applicable to loans is totally unjustified in light of the context in which it is used. The word "shall" does denote a mandatory function, however, its positioning in this provision only mandates notice if forfeiture is sought for failure to maintain a positive policy value. Once total indebtedness equals or exceeds the value of the policy, the policy is not void, but voidable. The word "shall" in this disputed provision of the policy only requires notice to the owner when the insurer seeks to void a policy for this reason.

Great Horizons points to two Indiana cases which it contends involve circumstances similar to those in the instant case. In *Lincoln National Life Insurance Co. v. Sobel,* 110 Ind.App. 331, 35 N.E.2d 121, 37 N.E.2d 698 (1941) and *Olin v. Phoenix Mutual Life Ins. Co.,* 113 Ind.App. 81, 46 N.E.2d 731 (1943), the insurance policies contained automatic premium loan provisions. There came a time when the owner of each policy failed to make the required premium payment, while outstanding loans equaled or exceeded the value of the respective policies. In each case, the insurer did not treat the policy as having terminated for failure to pay a premium, but gave the insured notice and forfeited the policy for failure to maintain a policy value in excess

---

**9.** See pages 1072 and 1073, *supra,* for pertinent provisions of these statutes.

of loan indebtedness. A close examination of the *Olin* and *Sobel* cases quickly reveals why they must be distinguished from the facts in the instant case. In both *Olin* and *Sobel,* the automatic loan provision specifically required utilization of the notice procedure before forfeiting the policy after nonpayment of premiums.[10] The Massachusetts Life policy in the instant case contains no such notice requirement.

In their briefs filed with the various motions, the parties have cited no cases which involve judicial interpretation of insurance terms similar to those here disputed. While interpretation of these policy provisions appears to be one of first impression in this jurisdiction, numerous other jurisdictions have addressed similar policy language. In such cases, courts have been called upon to resolve the conflict between a provision automatically lapsing a policy for failure to pay premiums, and a loan provision requiring a prior notice before terminating a policy in which the total indebtedness equals or exceeds the value of the policy.

In the case of *Pacific Mutual Life Ins. Co. v. Davin,* 5 F.2d 481 (4th Cir. 1925), the insurance policy contained an automatic premium loan provision. When an annual premium was not paid when due, an automatic loan was impossible because a previous loan had left a total indebtedness exceeding the cash surrender value of the policy. A year later, the insured died without any further payments being made toward the policy. The insured's administrator argued that the policy had not lapsed because of a term which provided that failure to repay a loan or interest thereon shall not void the policy unless the total indebtedness thereon shall exceed the cash surrender value at the time of such failure, nor until 31 days after notice of such fact has been mailed to the insured. The company argued that the policy lapsed for failure to pay a premium, and expired at the end of the grace period. The insurance company admitted that no notice of forfeiture for nonpayment of the loan had been sent. The United States Circuit Court of Appeals for the Fourth Circuit held that the policy lapsed for nonpayment of premiums. The Court held that automatic premium provisions are contractual and where there is insufficient cash value in the policy, such provisions are inoperative. Since there was no value with which to buy additional coverage, the policy automatically terminated at the end of the grace period by its terms, and notice was not required.

The Supreme Court of Ohio considered similar policy terms in the case of *Columbus Mutual Life Ins. Co. v. Hines,* 129 Ohio St. 472, 196 N.E. 158 (1935). In *Hines,* an insurance contract contained an automatic

---

**10.** The policy in *Olin* provided in pertinent part:
   "*Premium Liens* [I]n event of default in the payment of any premium . . . the Company will . . . keep this policy in force by charging up thereafter against this policy each premium . . . as it becomes due (if it be not paid in cash) until such accumulated indebtedness, with interest, equals or exceeds the cash value hereunder, when this policy shall immediately cease and become void, *subject, however, to the notice of termination as described in the preceding provision.*" (Emphasis added).
   The preceding provision was entitled Policy Loans and provided:
   "[N]on payment of loan . . . will not void this policy until the indebtedness . . shall equal or exceed the cash value hereunder . . . [and] such termination shall not take effect until at least 31 days after the Co. has mailed notice . . . to the insured . . . ." 46 N.E.2d 731 at 733, 734.

The insurance policy in *Sobel* provided:
   "Loans to Pay Premiums . . . [I]f the net available cash surrender value be less than the premium that is due, the Co. will continue this insurance in force until such value is exhausted (that is, for a period which bears the same ratio to the full premium period then ensuing as such net value bears to the premium then due) and if . . . the last premium be not paid in full, all liability of the Company on this Policy shall thereupon terminate *subject to notice as hereinafter provided.*" (Emphasis added).
   The loan section of the policy provided:
   "Failure to pay any policy loan, automatic premium loan or interest thereon shall not avoid this Policy unless the total indebtedness shall equal or exceed the full amount available hereunder and in no event, until thirty days after notice thereof shall have been mailed to the last known address of the Insured, and of the Assignee, if any." 35 N.E.2d 121 at 124.

premium loan provision along with a clause providing that failure to repay a policy loan shall not void the policy unless the total indebtedness thereon equals or exceeds the loan value, and until one month after a notice is mailed to the insured. The Ohio Supreme Court held that a policy of life insurance automatically terminates and is of no further force where there is a default in the payment of premiums, even if the indebtedness to the insurer equals or exceeds the cash surrender value of the policy. The notice provision was held not to prevent a default.

On several occasions, the Missouri Appellate Courts have decided cases in which premiums were in default while total indebtedness equaled or exceeded the value of the policy. In *Heuring v. Central States Life Ins. Co. of St. Louis*, 230 Mo.App. 42, 87 S.W.2d 661 (1935), the insurer, utilizing the special automatic loan provision of the policy, paid annual premiums out of the reserves of the policy until total indebtedness equaled the value of the policy. A policy provision required that the insurance company give a 30 day notice prior to terminating a policy for failure to repay a loan when total indebtedness equaled the cash surrender value. The Missouri Court of Appeals held that the notice provision did not prevent lapse of the policy without notice, where the premium was not paid and there was no security for further automatic premium loans.

A different Missouri Appellate Court reached a similar conclusion in the case of *Rick v. John Hancock Mutual Life Ins. Co. of Boston*, 230 Mo.App. 1084, 93 S.W.2d 1126 (1936). In this case the policy did not contain an automatic premium loan provision, but provided for extended term insurance upon a default in premium payments. In a clause relating to repayment of loans, the policy provided that failure to repay a loan shall not void the policy when indebtedness equals the value of the policy until thirty-one (31) days after notice is sent to the insured. It came to pass that the insured borrowed a sum which, with interest, equaled the full cash reserve of the policy. Subsequently, the insured failed to make

his premium payment within the grace period. There was no cash reserve to purchase extended term insurance. The St. Louis Court of Appeals held that the policy was not forfeited for failure to repay a loan, but rather that it lapsed due to the insured's failure to pay the required premiums, and that no notice was required.

In the case of *Loss v. Mutual Life Ins. Co. of N. Y.*, 230 F.Supp. 329 (S.D.N.Y.1963), the Court was confronted with an insurance policy containing an automatic premium loan provision and a clause requiring a 30 day notice prior to avoidance of a policy for failure to repay a loan when the insured's indebtedness equals or exceeds the loan value. The District Court held that where the insured failed to pay the premium when due, and the automatic loan provision was inoperative due to previous loans against the policy, the policy lapsed for failure to pay the premium and not because of excess indebtedness. Therefore, the Court reasoned, no notice was necessary prior to forfeiture.

The case of *Presentation Sisters v. Mutual Benefit Life Ins. Co.*, 85 S.D. 678, 189 N.W.2d 452 (1971), involved an assigned life insurance policy which contained an automatic premium loan provision. When the premium was not paid on time policy loans were deducted from the cash value to determine the surrender value and the period of time for which extended insurance coverage was available under the automatic premium loan provision. The assignee contended that this provision required notice by the insurer that the premium is not paid. The Court held that absent a contractual obligation, notice was not required on account of nonpayment of the premium, the policy lapsing on account of such nonpayment of premium and not because of nonpayment of a loan, which would require prior notice to the assignee.

The most recent case discovered by the Court discussing this issue is *Bauge v. Crown Life Ins. Co.*, 473 F.2d 787 (9th Cir. 1972). In this case the beneficiaries of a life insurance policy sued to recover on a

policy which the insurer claimed had lapsed for nonpayment of premiums. The policy contained an automatic premium loan provision, as well as a provision voiding the policy for allowing total indebtedness to exceed cash value, but not until a 30 day notice was sent to the policy applicant or assignee. The beneficiaries acknowledged that the premium was not paid and that no security was available for a premium loan, but argued that the policy could not be forfeited without the 30 day notice. Though prior automatic premium loans had exhausted the security in the policy so that total indebtedness equaled cash value, the Ninth Circuit held that the policy lapsed without notice to the insured.·

The above cases demonstrate that the presence of a policy provision requiring a notice prior to termination of a policy where total indebtedness equals or exceeds cash value, does not preclude automatic lapse of a policy for nonpayment of the required premiums. The cases discussed by the Court on this issue are by no means exhaustive. The weight of authority clearly supports a conclusion that a premium lapse provision is separate and distinct from a provision requiring notice prior to voiding a policy in which total indebtedness equals or exceeds the value of the policy. *Palmer v. Central Life Assurance Society of United States,* 193 Minn. 306, 258 N.W. 732 (1935); *Hally v. Standard Life Ins. Co.,* 38 Ga.App. 623, 144 S.E. 674 (1928); *Mills v. National Life Ins. Co.,* 136 Tenn. 350, 189 S.W. 691 (1916); *Moss v. Aetna Life Ins. Co.,* 73 F.2d 339 (6th Cir. 1934); *Bach v. Western States Life Ins. Co.,* 51 F.2d 191 (10th Cir. 1931).

B. The plaintiff contends that even if the Court does not agree with its argument that utilization of the prior notice procedure is absolutely required, the policy is at the very least ambiguous, and as such must be read in the light most favorable to the insured. Great Horizons maintains that the policy could reasonably be construed to require a 31 day notice *before* termination, and therefore, it must be so construed, because such a construction is most favorable to the insured.

The plaintiff has correctly stated a principle of Indiana insurance law that where an insurance policy is ambiguous, it will be construed most favorably to the insured. *State Security Life Ins. Co. v. Kintner,* 243 Ind. 331, 185 N.E.2d 527 (1962); *Patton v. Safeco Ins. Co.,* 148 Ind. App. 548, 267 N.E.2d 859 (1971). However, this Court cannot agree with the plaintiff's conclusion that the provisions of the instant policy are ambiguous. The test to be applied in determining whether an insurance contract is so ambiguous as to require construction most favorably to the insured is whether or not reasonably intelligent persons, on reading the contract, could honestly differ as to its meaning. *Jeffries v. Stewart,* 159 Ind.App. 701, 309 N.E.2d 448 (1974). The·test that reasonably intelligent persons differ on reading a contract is not met merely because controversy exists, and one party asserts a certain interpretation, while another denies it. *O'Meara v. American States Insurance Company,* 148 Ind. App. 563, 268 N.E.2d 109 (1971).

Insight into how reasonable persons might view the instant policy can be gained by reviewing cases in which similar policy provisions have been construed. In the case of *Robb v. Metropolitan Life Ins. Co.,* 351 Mo. 1037, 174 S.W.2d 832 (1943), the Missouri Supreme Court was presented with a policy containing a premium lapse provision, as well as a provision under policy loans permitting avoidance of the policy when indebtedness equals the cash surrender value, and after a one month's notice to the insured. The insured in *Robb* defaulted in his premium payments, and a policy loan plus extended term insurance rendered indebtedness equal to cash value. The plaintiff in *Robb* argued that the provision lapsing the policy for default in premiums must be construed in connection with the provision authorizing forfeiture of the policy for failure to pay interest on loans, when the indebtedness on the policy equals the surrender value, and after a one month notice. The Missouri Supreme Court rejected such a construction of the policy in holding that:

"[t]he two provisions are separate and distinct, not inconsistent, and both should be given effect. Under the policy, upon default in the payment of the premium and the expiration of the ensuing period of grace, the policy lapsed without any notice to the insured, and that was true regardless of whether or not there was an existing policy loan." 174 S.W.2d 832, 833.

In the case of *Coons v. Home Life Ins. Co. of New York,* 368 Ill. 231, 13 N.E.2d 482 (1938), the Illinois Supreme Court considered somewhat similar policy provisions and found no ambiguity in terms. In *Coons,* an ordinary life policy provided that after the policy had been in force for three years, the owner, upon a default in payment of premiums, had certain options including surrender for cash value, extended non-participating term insurance, or participating paid-up life insurance. The policy further provided that if the insured failed to elect an option, the policy would automatically be continued as non-participating extended term insurance. The policy also contained an automatic premium loan provision. While the policy was in force, the insured obtained a loan which was never repaid. When a premium came due in December, 1932, the cash value of the policy was only $11.36, which was insufficient to permit an automatic premium loan. When the premium remained in default and the insured did not elect a non-forfeiture option, the policy was automatically continued as non-participating extended term insurance for one additional month. The insured died during the following month. Beneficiaries under the policy argued that the policy could not be forfeited without notice to the insured as required in a provision relating to nonpayment of a loan. The Illinois Supreme Court held that the policy was not ambiguous, and that the notice requirement as to policy loans has no application to the nonpayment of premiums.

The case of *Moss v. Aetna Life Ins. Co.,* 73 F.2d 339 (6th Cir. 1934), involved three accident insurance policies in which the premiums remained unpaid at the end of the grace period. The plaintiff in *Moss* contended that the policies remained in force, nevertheless, because of the one month's notice required when indebtedness equals loan value. As to each policy, unpaid loans and accumulated interest had exhausted all the cash value. This lack of cash value prevented any automatic extension of insurance coverage. After analyzing the policies, the Sixth Circuit held that ". . . the loan and forfeiture provisions do not modify or in any way affect the avoidance of the policy for failure to pay premiums thereon." 73 F.2d 339, 340.

As the above cases demonstrate, courts have on numerous occasions been called upon to construe similar policy provisions. They have not found the terms to be ambiguous or inconsistent. The notice provision relating to terminating a policy in which total indebtedness equals or exceeds cash value is separate and distinct from provisions relating to lapse for nonpayment of premiums. *Robb v. Metropolitan Life Ins. Co., supra.*

Persuasive evidence that the contract provisions in question are not ambiguous is also found within the policy itself. Great Horizons contends that the instant policy cannot be forfeited for failure to pay premiums because of a provision that:

"If and when the total indebtedness, including interest due or accrued, equals or exceeds the then value of this policy plus the value of any paid-up additions and any dividend accumulations and if at least thirty-one days prior notice shall have been mailed by the Company to the last known address of the owner and of the assignee of record, if any, this policy shall terminate and become void."

But the very next sentence of the policy provides:

"Any indebtedness may be repaid at any time before maturity of the policy by death or as an endowment *or before the expiration of the grace period for the payment of any premium in default.*" (Emphasis added).

This sentence clearly indicates that failure to pay a premium within the grace period is

a terminating event. Once the grace period expires while a premium payment remains in default, repayment of indebtedness is no longer possible. The purpose of the notice in the provisions applicable to loans is to prevent forfeiture for nonpayment of a loan due to inadvertence or forgetfulness. *Lincoln National Life Ins. Co. v. Sobel,* 110 Ind.App. 331, 35 N.E.2d 121, 126, 37 N.E.2d 698. Since under the instant policy, failure to pay premiums within the grace period terminates all rights to repay loans in any event, the notice has no value as a reminder.

C. Besides its arguments based upon the provisions in the policy, Great Horizons contends that certain equitable considerations prohibit forfeiture. The plaintiff maintains that Massachusetts Life had an obligation to keep it informed as to loan value available for automatic premium loans. Additionally, the plaintiff charges that when Massachusetts Life tendered a dividend check on May 28, 1975, it lured the plaintiff into believing the policy had a loan value with which to secure automatic premium loans. The Court is compelled to reject both arguments.

Neither Indiana law nor the policy required Massachusetts Life to keep the plaintiff informed or notified as to the current loan value available on the policy. The plaintiff contends that notice is nevertheless required because the defendant had exclusive knowledge over that information.

The Court would note that in the case of dividends or surplus which by terms of a policy are apportionable to and discharge *pro tanto* any premium, certain jurisdictions, including Indiana, hold that the insurer is under a duty to notify the insured as to the amount of such dividend, so that he may know how much cash will be required to discharge the entire premium due. *Phoenix Mutual Life Ins. Co. v. Hinesley,* 75 Ind. 1 (1881); *Phoenix Mutual Life Ins. Co. v. Doster,* 106 U.S. 30, 1 S.Ct. 18, 27 L.Ed. 65 (1882). At issue is whether loan value sufficiently resembles a dividend to also require notice of funds available to pay premiums. This Court holds that there is a significant difference between loan value and dividends, and that no notice as to loan value is required.

Few cases have discussed the relationship between dividends and loan value, or the necessity of informing the insured as to current loan value. These issues were, however, thoroughly discussed in the case of *General American Life Ins. Co. v. Butts,* 193 Ga. 350, 18 S.E.2d 542 (1942). In the *Butts* case, the insurance contract provided for an automatic premium loan in the event a premium remained unpaid at the end of the grace period. The insured defaulted on his premium, and the then value of the policy was insufficient to secure an automatic premium loan for an entire quarter. The Georgia Court of Appeals ruled that in such a situation the insurer had an implied duty to notify the insured as to the loan value available, so as to enable him to pay the difference in cash. The Georgia Supreme Court reversed, holding no such implied duty was created. The *Butts* Court noted that the lower court's decision was based largely on precedent relating to notification of dividends applicable to premiums due. *Kaeppel v. Mutual Life Ins. Co.,* 78 F.2d 899 (3rd Cir. 1935). The Court in *Butts* emphasized some of the significant differences between accumulated dividends and loan value. One significant difference relates to ownership of the respective funds. Dividends are participating profits and once declared belong to the insured. The loan value of a policy represents a reserve fund set up by the insurance company. In the absence of a contrary stipulation, it is the property of the company, and not the insured. The most important difference, however, is that policy provisions relating to dividends which the insured may elect to apply toward premiums, pertains to the payment of premiums. By contrast, loan value is extended to premiums only when the premium is not paid at the end of the grace period. Loan value is only a factor in event of the failure of the insured to pay premiums. In short, knowledge of dividends available where a policy so provides is crucial to a determination of the

premium due. In contrast, the insured has no rights to an automatic premium loan under the present policy until 31 days after the premium was due. Massachusetts Life is not required to anticipate the desire of the plaintiff to utilize premium loans as a method of discharging premiums.

In the case of *Loss v. Mutual Life Ins. Co. of New York,* 230 F.Supp. 329 (S.D.N.Y. 1963), the insured defaulted in his premium payments and there was insufficient security for a premium loan so that the policy lapsed. The plaintiff in that case contended that the insured should have notified him of the loan value in the policy available for premiums, as is the case with dividends. The District Court rejected this argument noting the differences between dividends and loan value previously discussed.

In the case of *Aetna Life Ins. Co. v. Eilers,* Tex.Civ.App., 367 S.W.2d 732 (1963), a beneficiary of a life policy which had lapsed for failure to pay premiums contended that the insurer was required to give prior notice that default would effect automatic extended insurance. The Texas Court of Civil Appeals cited *General American Life Ins. Co. v. Butts, supra,* and held no notice was required, as the obligations and rights of the parties were self-operative.

Besides case authority, the equities weigh against construing any implied duty on the part of Massachusetts Life to notify the plaintiff of the current loan value. The burden of keeping a policy in force by prompt payment of premiums rests upon the owner of the policy. Great Horizons, as the policy owner, is a business entity capable of keeping sophisticated records of its assets, including insurance policy values.

Additionally, although Massachusetts Life admits no actual notice of current loan value was sent to the plaintiff, the record would indicate that Great Horizons had constructive knowledge that the loan value was exhausted as of May 28, 1975. This follows from the fact that the plaintiff arranged to pay $30.68 of the March, 1975 premium by check, since the loan value of the policy was not sufficient to pay the entire premium.

When that check was issued Great Horizons had knowledge that the then loan value was exhausted.

The above case authority and equitable considerations persuade the Court that Massachusetts Life had no duty to notify the insured as to the current loan value of the insurance policy.

The plaintiff charges that Massachusetts Life misled it into believing the policy had a loan value by issuing a dividend check on May 28, 1975. The Court sees no merit in this contention. The comptroller of Great Horizons stated in his deposition that shortly after the check arrived, the plaintiff was notified that the payment was made in error. The comptroller also indicated that he informed the President of Great Horizons that the policy probably had terminated, and that the dividend check was a mistake. Under the circumstances it would be unreasonable to rely on the check as evidence that the policy was in force and had a positive loan value.

## IV. Punitive Damages

As the Court has rejected the arguments of the plaintiff that the policy was still in force on the date the insured died, it must also reject the plaintiff's claims for punitive damages. The leading Indiana case permitting punitive damages when a breaching party to a contract commits acts which amount to an independent tort is *Vernon Fire & Casualty Ins. Co. v. Sharp,* 264 Ind. 599, 349 N.E.2d 173 (1976). In *Vernon Fire & Casualty,* the insured had purchased a fire policy in the amount of $31,250.00. When the insured's building was destroyed a dispute over liability arose, even though total damages exceeded $90,000.00, due to the fact that it was a scheduled policy, and coverage was prorated to individual items. The Indiana Supreme Court held that a jury could find the insurer liable in punitive damages for negotiating the claim in bad faith and taking advantage of the desperate need of the insured to secure settlement of a separate lawsuit.

In the instant case, the plaintiff produced no evidence of bad faith whatsoever. The mere fact that Massachusetts Life refused repeated demands for payment of the policy proceeds does not constitute bad faith. As the Indiana Supreme Court pointed out in *Vernon*, ". . . an insurer cannot be subjected to a punitive damage award for seeking in good faith to pay only the amount which the law requires to be paid under the contract." 349 N.E.2d 173, 181. Here, no evidence has been presented that the insurer was seeking to take advantage of the insured in return for performance of its obligations under the policy, as was the case in *Vernon*. In the instant case, Massachusetts Life continually maintained that the policy had lapsed for failure to pay premiums and that no policy proceeds were payable to the insured.

The only alleged evidence of bad faith which the plaintiff produced was the failure to honor the demand for payment of policy proceeds. The *Vernon* Court specifically held that unless the policy is susceptible to only one interpretation, and that being in favor of the plaintiff, punitive damages could not be based on the mere refusal to pay a claim. Since the Court has rejected the construction of the policy urged by Great Horizons, the act of Massachusetts Life in refusing to honor the claim does not constitute bad faith, and the plaintiff is not entitled to punitive damages.

## V. Counterclaim

On June 16, 1977, Massachusetts Life filed its counterclaim demanding return of the $1,555.00 allegedly paid to the plaintiff by mistake. Although the defendant terms the counterclaim as compulsory, the Court is not convinced that it should be so characterized. The Court feels there may be a question as to whether the counterclaim arises out of the same transaction or occurrence as the original complaint. Rule 13(a), Federal Rules of Civil Procedure. However, even if the counterclaim is compulsory, the Court feels constrained to exercise its discretion and dismiss the counterclaim for lack of subject matter jurisdiction, now that summary judgment has been granted as to the original contract action.

Jurisdiction to hear counterclaims is within the so-called ancillary jurisdiction of the Court. When an original diversity action is properly subject to the Court's jurisdiction, the Court may also decide compulsory counterclaims, even if the counterclaim could not supply an independent basis of jurisdiction. *Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2nd Cir. 1968). The major purpose of ancillary jurisdiction is to promote judicial economy and trial convenience. This purpose is particularly well served when the original claim proceeds to trial and where the same factual and legal issues are relevant.

In the view of the Court, maintaining jurisdiction over the counterclaim through ancillary jurisdiction is within the Court's discretion, once the original action is terminated and there is no independent jurisdictional basis. The Court recognizes that discretion is often exercised in favor of maintaining such jurisdiction. *Mayer v. Chase National Bank of the City of New York*, 165 F.Supp. 287 (S.D.N.Y.1958); *Kipka v. Chicago & Northwestern Railway Co. et al.*, 289 F.Supp. 750 (D.C.Minn.1968). In this case, however, the Court does not feel the purposes of ancillary jurisdiction would be served by continuation of the counterclaim in this Court.

In the instant case the parties voluntarily submitted the basic contract claim to the Court on motions for summary judgment. With the Court's decision in that matter, there remains for disposition only the single issue raised by the counterclaim. This issue can be litigated with equal convenience in the state courts.

The Court is cognizant of the admonition which the Supreme Court expressed to federal courts in the case of *United Mine-Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, jurisdiction over the original action was based not on diversity but federal question (labor law). 28 U.S.C. § 1331. In

addition to the federal claim, a state law claim was brought based upon the doctrine of pendent jurisdiction. Even though the federal issue was terminated prior to trial, the district court submitted the state law claim to a jury. The Supreme Court held that the power of the federal court to maintain jurisdiction over a pendent claim need not be exercised in every case in which it may exist. In discussing considerations which might weigh upon a federal court's discretion, the high court stressed judicial economy, fairness and convenience. The Court admonished the lower federal courts to hesitate in exercising jurisdictions where these considerations are not served. 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218.

While in *Gibbs,* the Supreme Court was discussing pendent jurisdiction, this Court regards the directives equally applicable to ancillary jurisdiction.

In the instant case the parties will not be seriously prejudiced by submitting the counterclaim issues to a State tribunal. This issue is entirely governed by state law, and the amount in controversy is far below that required to independently confer jurisdiction. Under the circumstances, the Court does not regard invocation of ancillary jurisdiction as justified. Therefore, the counterclaim is dismissed without prejudice for lack of subject matter jurisdiction. Rule 12(b)(1), Federal Rules of Civil Procedure.

### VI. Conclusion

 The Court has considered and discussed the issues raised in the cross-motions for summary judgment. Determining that there are no genuine issues as to any material fact, the Court finds that the defendant, Massachusetts Life, is entitled to summary judgment as a matter of law. Under the provisions of the policy and applicable law, Policy No. 4–465–594 lapsed for failure to pay the required premium. The defendant did not elect to void the policy on the grounds that total indebtedness equaled or exceeded the cash value of the policy, and therefore, no 31 day notice was required prior to forfeiture of the poli-

cy. The defendant had no implied duty to keep the insured appraised of the current loan value of the policy available for premiums.

Neither is the plaintiff entitled to punitive damages. Mere refusal to pay a claim upon demand does not constitute bad faith or an independent tort capable of supporting a claim for exemplary relief.

Finally, the counterclaim must be dismissed for lack of subject matter jurisdiction since the original action has terminated as a result of this decision. The parties will not be prejudiced by submitting this issue to a State tribunal to apply its own law.

Therefore, it is ORDERED, ADJUDGED and DECREED that the motion for summary judgment of the defendant, Massachusetts Life, is GRANTED, and the cross-motion of the plaintiff, Great Horizons, is DENIED. Additionally, the Court *sua sponte* DISMISSES the counterclaim of Massachusetts Life due to a lack of subject matter jurisdiction.